421 So.2d 267 (1982)
HIGHT ENTERPRISES, INC.
v.
SMITH AND JOHNSON (SHIPPING) INC. and Smith and Johnson (Gulf) Inc.
No. 13100.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1982.
Rehearing Denied November 19, 1982.
Bernard J. Rice III, Gretna, for plaintiff-appellee.
Ralph E. Smith, Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellant.
Before BARRY, BYRNES and CIACCIO, JJ.
BARRY, Judge.
This is a suit to collect the balance on a dredging contract. Judgment was rendered against Smith and Johnson (Gulf) Inc. *268 ("Gulf") (who filed for bankruptcy) and Smith and Johnson (Shipping) Inc. ("Shipping") who appeals contending it was not a party to the contract. The district court found Shipping liable as an apparent or undisclosed agent of either Gulf or Armasal Line, the company for which the dredging was done.
The basic facts and the amount claimed are not in dispute. Shipping is a New York steamship brokerage corporation which had a New Orleans office at 904 First National Bank of Commerce Building prior to October 8, 1979. Gulf was formed with Shipping as a 50% shareholder and from October 1, 1979 Gulf was headquartered at 709 Julia Street in New Orleans. It handled all activities in this area; Shipping ceased operations in the Gulf Coast area at that time.
One of Gulf's clients was Armasal, a now-bankrupt corporation which operated a steamship service between the Gulf Coast and Latin America. Armasal's cargo was handled through the wharf facilities at the Dwyer Road Terminal which were leased in Armasal's name and operated by Gulf.
In March, 1980, Captain Hansen, a Gulf employee, telephoned Massey, an independent dredging contractor, to arrange for dredging at the Dwyer Road slip. Plaintiff Hight Enterprises, Inc., acted as billing and administrative agent for Massey, who dealt directly with Hansen. Although Hansen was a Gulf employee and never worked for Shipping, he referred to his employer as simply "Smith and Johnson" in his dealings with Massey. Neither Massey nor Hight's employees were aware there were two separate corporations (Gulf and Shipping) until after the dredging was completed. Both bills for dredging were addressed to "Smith and Johnson" at the Dwyer Road Terminal.
Around June 4, 1980, Massey went to Gulf's Julia Street office to pick up a check for partial payment for the dredging. With the check, he was given some invoices to Hight on Smith and Johnson (Shipping) Inc. billing forms which bore the old First National Bank of Commerce Building address for Shipping. The invoices had been issued in error, as Gulf's personnel admitted, when Massey and his attorney went to Gulf's Julia Street office a month later to clarify those invoices. Mr. Labbe, vice president of Gulf, acknowledged the billing to Hight was a mistake and withdrew the bill. At trial Labbe explained Gulf was using up an excess supply of Shipping's old billing forms; Gulf's name and address were supposed to be stamped on the old forms, but the stamp had not been used on those particular invoices.
Evidence at trial showed the sign on Gulf's Julia Street office read, "Smith and Johnson, established 1927," without differentiating between the two corporations. Gulf was not in existence until 1979.
The record also shows that service of plaintiff's supplemental petition, directed to Smith and Johnson (Shipping) Inc., was delivered to the Julia Street address, and accepted by a Gulf secretarial employee.
All of plaintiff's witnesses agreed that, in their contacts with Gulf's employees, the corporation was referred to as simply "Smith and Johnson," not "Smith and Johnson (Gulf) Inc.," and that they were unaware of Gulf and Shipping as separate entities. Hansen, Labbe and East  the three Gulf employees who testified  admitted they usually identified their employer as just "Smith and Johnson." No employees or representatives of Shipping were in contact with Massey or Hight in connection with the dredging contract or plaintiff's claim, and no Shipping personnel testified at trial.

SHIPPING'S LIABILITY AS AGENT
In somewhat ambiguous Reasons for Judgment, the trial court found Shipping acted as either apparent or undisclosed agent of Armasal or Gulf. We disagree and find no basis for holding Shipping liable under either agency doctrine. The "apparent authority" doctrine applies to situations in which the principal is held liable to third parties for acts of his agent which, although exceeding the agent's actual authority, were done with the ostensible or apparent authorization of the principal. "The concern *269 here is whether the principal did anything to clothe the agent with apparent authority to perform the act though no actual authority was given." Pailet v. Guillory, 315 So.2d 893, 896 (La.App.3rd Cir. 1975). (Emphasis ours). As the principal in this case would be either Gulf or Armasal whose liability is not in question, the theory of apparent authority cannot serve as a basis for liability of Shipping as an agent.
The doctrine of "undisclosed principal," on the other hand, does provide support for holding an agent liable to third parties, but its application is restricted to persons with whom the agent has contracted without disclosing his status as agent and the identity of his principal. We do not question the current viability of that doctrine in Louisiana, which, as plaintiff points out, was recently reiterated by the First and Third Circuits. See Livingston Roofing Co., Inc. v. E.E. Rabelais & Son, Inc., 401 So.2d 1047 (La.App.3rd Cir.1981) and J.T. Doiron, Inc. v. Lundin, 385 So.2d 450 (La. App. 1st Cir.1980). We find, however, plaintiff's reliance on those cases is misplaced.
In the cited cases, the alleged agent was the party with whom the claimant had actually contracted or transacted the business in question. In each instance, it was the agent who had been in contact with the claimant and who had actually incurred the obligation, which he later claimed had been done on the principal's behalf and with the principal's authority. Liability of an agent of an undisclosed principal must be predicated on actions of the agent under LSA-C.C. Art. 3013 which provides:
The mandatory is responsible to those with whom he contracts, only when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers. (Emphasis added).
Thus, in order for Shipping to be liable as agent for either Armasal or Gulf (the undisclosed principals), the facts would have to show that Shipping dealt with plaintiff in some way in connection with the dredging agreement.

The learned Trial Judge's oral Reasons for Judgment, and plaintiff-appellee's brief, point to several items in support of the "undisclosed agency" theory. First, it is contended that the erroneous invoice to plaintiff on Shipping's stationery indicated to plaintiff it was dealing with Shipping. The evidence shows, however: that the invoice was given to plaintiff at Gulf's place of business by one of Gulf's employees; that it was Gulf's policy to stamp Gulf's address on the old forms and Gulf's personnel were in error in failing to correct the address and in billing Hight for monies not due; that the invoice had nothing to do with the subject dredging contract; and that the invoice was not given to plaintiff until after the dredging work had been contracted for and substantially completed. The only possible action taken by Shipping in connection with that invoice would be its implied permission to Gulf to use old Shipping billing forms. Any such consent would be conjectural and contingent at best, and has no bearing on the undertaking of the subject debt to plaintiff.
The sign at Gulf's Julia Street office, which reads, simply, "Smith and Johnson, established 1927" is the next bit of evidence cited by the Trial Judge. The sign does not distinguish between Gulf and Shipping, and may be misleading in suggesting to the public that the company located there (Gulf) has been in existence since 1927. Again, however, there is no evidence that Shipping is responsible for the sign, which is not at Shipping's former First National Bank of Commerce Building address. Further, as no representative of plaintiff ever visited the Julia Street office, and Massey's two visits there were at least four months after the contract had been negotiated by phone and essentially completed, the sign does not implicate Shipping as an agent with regard to the subject debt.
Plaintiff-appellee places great reliance on the fact that a secretary employed by Gulf at the Julia Street office accepted service of plaintiff's supplemental petition addressed to Shipping at Gulf's office. However, there was no showing that Shipping authorized *270 such acceptance or that Shipping "had an agent for service of process at 509 Julia Street," as asserted in plaintiff's brief. We find no merit in plaintiff's argument that Shipping's failure to except to that service proves it had appointed Gulf's employee as its agent for service of process.
We feel it is clear, from the totality of the evidence, plaintiff's representatives believed they were dealing with a local corporation named "Smith and Johnson" for which they undertook to perform. Neither Massey nor Hight inquired into the corporate name, status, financial condition, or stock ownership. Thus, although plaintiff was ignorant of the full name of the corporation for which Hansen worked (Smith and Johnson (Gulf) Inc.) there is no evidence plaintiff dealt with or believed it was dealing with, or relied on the corporate name or credit of, Smith and Johnson (Shipping) Inc. Liability of an undisclosed agent must be bottomed upon actions of the agent in dealings with the third party. The record does not support the Judge's finding that Shipping acted as an agent or had any involvement with the subject contract.

SHIPPING'S LIABILITY AS SHAREHOLDER OF GULF
Although the trial court did not discuss or base its ruling on Shipping's status as a 50% shareholder of Gulf, both plaintiff and defendant raised the issue in their briefs.
As defendant points out, the general rule is that a corporation is a distinct entity, separate from its shareholders. The shareholders are not liable for debts contracted by the corporation in the absence of fraud or disregard of the corporate entity. Louisiana Civil Code Arts. 435, 437 and LSA-R.S. 12:93(B); Liberto v. Villard, 386 So.2d 930 (La.App.3rd Cir.1980); Smith v. Moore, 347 So.2d 316 (La.App.4th Cir.1977); Lushute v. Diesi, 343 So.2d 1132 (La.App.3rd Cir.1977), modified on other grounds 354 So.2d 179 (La.1978); Kingsman Enterprises, Inc. v. Bakerfield Electric Co., Inc., 339 So.2d 1280 (La.App.1st Cir.1976).
Defendant concedes a creditor may "pierce the corporate veil" and hold a shareholder liable for debts contracted by the corporation, in certain exceptional circumstances. The situations in which this doctrine is applicable have been restricted to instances in which a shareholder either practices fraud upon a third party, through the corporate entity, or "disregards the corporate entity to such an extent that the individualities of the corporation and shareholder cease to exist; the corporation no longer exists as an individual distinguishable from the shareholder." Liberto, supra, at 936.
There is no evidence of fraud in the record. The factors which constitute "disregard of the corporate entity" sufficient to "pierce the corporate veil" were delineated by the 1st Circuit in Kingsman Enterprises v. Bakerfield Electric Co., supra, and reiterated by the 2nd Circuit in Smith-Hearron v. Frazier, Inc., 352 So.2d 263, 265 (La.App.2d Cir.1977):
(1) Commingling of corporate and shareholder funds;
(2) Failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs;
(3) Undercapitalization; and
(4) Failure to hold regular shareholder or directors meetings.
In seeking to establish "the mingling of the corporate identities and individualities" of Gulf and Shipping, plaintiff points to the facts upon which it relied in its "undisclosed agency" argument: (1) the sign at Gulf's Julia Street office which said "Smith and Johnson, est. 1927"`; (2) the acceptance of service on Shipping by one of Gulf's secretaries; (3) Gulf's use of Shipping's invoice form in billing Hight in error; and (4) Gulf's failure to apprise plaintiff of the existence of the two separate corporations.
Whether the corporate veil should be pierced is primarily a finding of fact. Liberto, supra. None of the traditional factors justifying piercing the corporate veil are present here. There is no evidence of commingling of funds, undercapitalization, *271 failure to comply with statutory or corporate formalities, or fraud. The factors cited by plaintiff are not frequent, serious, or exceptional so as to warrant piercing the corporate veil to hold Shipping liable on Gulf's contract with plaintiff. As with the agent-principal theory, application of the "piercing the veil" doctrine in this case would be the reverse of the usual situation. The usual case involves action by a major shareholder for which the shareholder seeks to escape liability by hiding behind the corporate cloak. Bossier Millwork & Supply Co. v. D & R Constn. Co., 245 So.2d 414 (La.App.2d Cir.1971); Kingsman Enterprises, supra. The actions cited by plaintiff are all acts or omissions of Gulf, not its shareholder, Shipping. Furthermore, the circumstances enumerated by plaintiff are unrelated to the dredging contract between plaintiff and Gulf.
The purpose of "piercing the corporate veil" is to protect a creditor in his dealings with a shareholder who fails to distinguish, in such transactions, between the corporation and his identity as a shareholder. These facts do not present such a situation. Shipping never dealt with plaintiff at any time in connection with the dredging work. It is therefore irrelevant that plaintiff was unaware of the existence of Shipping as another corporate entity. Plaintiff believed it was dealing with a corporation, headquartered on Julia Street, by which Hansen was employed. Plaintiff's ability to obtain judgment against that corporation, for nonpayment of plaintiff's bill, was not affected by whether the corporation involved was known as "Smith and Johnson" or "Smith and Johnson (Gulf) Inc." Plaintiff admitted, however, it was ignorant of the existence of "Smith and Johnson (Shipping) Inc." at the time it agreed to do the dredging and therefore could not have relied on Shipping's credit or solvency. To allow plaintiff to pierce the corporate veil just because plaintiff's debtor, Gulf, declared bankruptcy, and one of its major shareholders, Shipping, remains solvent, would contravene the policy behind both the corporation and bankruptcy laws.
Accordingly, the judgment of the district court is reversed and set aside and judgment is hereby entered in favor of defendant, Smith and Johnson (Shipping) Inc., and against plaintiff, Hight Enterprises, Inc., dismissing the appeal, at plaintiff's costs.
REVERSED.