456 So.2d 673 (1984)
Agustin CHIN
v.
Herbert J. ROUSSEL, Jr. and Roussel Engineering, Inc.
Douglas C. LEWIS
v.
Herbert J. ROUSSEL, Jr. and Roussel Engineering, Inc.
Nos. 83-CA-859, 83-CA-860.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 1984.
Writ Denied November 9, 1984.
*675 Eric Oliver Person, New Orleans, for plaintiff-appellee.
Robert A. McMahon, Jr., Bernard, Cassisa, Babst & Saporito, Metairie, for defendant-appellant.
Before BOUTALL, CHEHARDY and CURRAULT, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Parish of Jefferson, wherein the Honorable Floyd W. Newlin rendered judgment in favor of plaintiffs and against defendants enforcing a buy-back provision of a shareholders' agreement entered into by the parties to this litigation.
Herbert J. Roussel, Jr. is president and chairman of the board of directors of Roussel Engineering, Inc., a closely held corporation. All common capital stock is owned by employees of Roussel Engineering, Inc.: Mr. Roussel owning 74 percent; Mr. Agustin Chin, 15 percent; Robert Stoddard, 7 percent; and Douglas Lewis, 4 percent.
On June 11, 1979, all of the stockholders became signatories to a consensual restrictive covenant titled "Shareholders' Agreement." The corporation also became a party to this agreement through the signature of Herbert Roussel in his capacity as president.
In 1980, both Lewis and Chin ceased to be employed by Roussel Engineering, Inc. Pursuant to certain provisions of the 1979 shareholders' agreement, Lewis and Chin requested that an audit be made so that the corporation could repurchase their stock. An audit was prepared and pursuant to a formula set out in the agreement, the stock was given a value. However, the corporation refused to purchase the 19 percent shares held by Lewis and Chin.
Suit was filed by Lewis and Chin against Herbert Roussel, Jr. and Roussel Engineering, Inc., asking the trial court to enforce the buy-sell provisions of the shareholders' agreement which they asserted obligated the corporation to repurchase their shares upon cessation of their employment with Roussel Engineering.
In response, defendant, Herbert Roussel, reconvened, stating that he was the holder and payee of a promissory note executed by Douglas Lewis and avering such note to be due and owing together with specified interest and 25 percent attorney's fees. After a trial on the merits, the trial court rendered judgment in favor of plaintiffs and against Herbert Roussel, Jr. and Roussel Engineering, Inc. as to defendants' obligation to repurchase plaintiffs' stock; and further in favor of Herbert Roussel against Douglas Lewis as to the note held by Mr. Roussel, but failed to award any attorney's fees. Defendants have appealed.
Appellants assert the following specifications of error:
that (1) the trial court erred in ruling that the June 11, 1979 Shareholders' Agreement obligated Roussel Engineering, Inc. to purchase the stock of Agustin Chin and Douglas C. Lewis; that
(2) the trial court erred in admitting into evidence photocopies of the June 11, 1979 Shareholders' Agreement, the A.A. Harmon Audit and the June 1, 1979 Pre-Payment Plan Document; that
(3) the trial court erred in excluding the testimony of Joseph Barbe on the question of Herbert J. Roussel, Jr.'s intent regarding the purchase or redemption agreement; that
*676 (4) the trial court erred in casting Herbert J. Roussel, Jr. in judgment individually; and that
(5) the trial court erred in failing to award Herbert J. Roussel, Jr. attorney's fees of 25 percent of the balance then due on the promissory note made by Douglas C. Lewis.
At the close of plaintiff's case, defendant moved for a directed verdict as to Agustin Chin on the grounds he voluntarily resigned from the corporation. In denying such motion, the trial judge stated that, after reading the shareholders' agreement at least ten times, he found it unambiguous and that the totality of the agreement indicated clearly that any reasonable person would interpret it to mean the corporation was bound to purchase the shares. The appellant initially argues that conclusion was error.
Section 5 entitled "Endorsement on Stock Certificates," contains an endorsement which is mandated by the agreement to be placed on all certificates of stock. This restrictive endorsement subjects the transfer of the stock to a compulsory buy-sell agreement between the holder and the corporation.[1] The language of this required endorsement is clear and unambiguous.
Appellant argues, however, that this restrictive endorsement does not apply to the stockholders' agreement in its entirety, but instead applies only to Section 3B of that agreement. Section 3 is entitled "Obligation to Sell and To Purchase Stock," and paragraph B is concerned with the corporation's mandatory purchase of any holder's stock should that holder's marriage be dissolved by judicial separation or divorce, or if he and his spouse have a judicial separation of property.
This court succintly stated the applicable law as follows:
"Legal agreements have the effect of law upon the parties, and they are bound by their agreement regardless of any seemingly harsh consequences, provided the agreement is not contra bonos mores or in violation of some prohibitory law. Further, courts are bound to give legal effect to all contracts according to the true intent of the parties. Intent is to be determined by the words of the contract, when same are clear, explicit and lead to no absurd consequences." (Citations omitted) Kenner Industries v. Sewell Plastics, Inc., 437 So.2d 1191 (La.App. 5th Cir.1983)
The agreement itself is completely void of any language, explicit or implied, which would indicate that the compulsory buy-sell arrangements found in Section 5 should be limited to Section 3B. The buy-sell found in Section 3B is specifically triggered by the stockholder's judicial separation, divorce or judicial separation of property. The endorsement's buy-sell found in Section 5, however, is stated in clear, unambiguous terms, contained wholly within a separate and distinct section of the agreement, and can in no way be interpreted to be restricted to Section 3B. We reach this conclusion after several readings of the entire agreement with emphasis on the relationship between Section 5 and the complete document.
Appellants next assert that the trial court erred in concluding that the compulsory buy-sell agreement could be triggered by the cessation of employment as found in Section 3A.[2] At trial, appellant argued unconvincingly *677 that the term "cessation of employment by the corporation" could only mean termination of the shareholder's employment by the firing of that shareholder. The trial court disagreed and interpreted "cessation of employment" as termination of employment for whatever reason. Appellant now argues such conclusion was error.
After close inspection of Section 3A, it is apparent that the obligation to sell and to purchase is triggered by the shareholder's termination regardless of whether that termination was either voluntary or involuntary. We are in agreement with the interpretation of "cessation of employment" given by the trial court and can find no error in that interpretation.
Appellants argue strongly that the copies of the shareholders' agreement, audit and pre-payment plan, entered into evidence by plaintiffs at trial, were not the best evidence. They assert that it was incumbent upon the appellees to make a due and diligent effort to obtain originals of each of those documents or at the very least certified copies.
Appellants fail, however, to remember that a certified true copy of the shareholders' agreement had already been placed into the record by them at an earlier date. Appellee not only made use of this copy in questioning Mr. Roussel as to the content of that agreement, but also entered it as his own exhibit P-1. Appellant is without authority to complain of appellee's making use of that which was already in the record especially when appellant caused it to be there. There was no reversible error committed by the trial court in allowing appellee to rely upon a certified true copy of the shareholders' agreement which had already been placed in the record.
While on the stand, appellant, Mr. Roussel, admitted that an audit had been prepared and that he had requested it to be prepared. He was then shown a photocopy of a document prepared by A.A. Harmon and Company dated October 6, 1980 and admitted that it was the audit prepared for the stockholders of Roussel Engineering, Inc. Appellee then placed the audit into evidence only to show that an audit had been prepared with its relevancy to be determined later.
Mr. Barbe, a C.P.A. employed by A.A. Harmon, personally prepared the audit. At trial, he identified the copy given to the court earlier as the audit he prepared. He was questioned by all parties including the trial judge as to the methods and procedures he used in preparing the audit. The trial court did not commit reversible error in allowing to be placed into evidence a photocopy of an audit when the one who prepared such audit was placed on the stand, questioned and admitted to the authenticity of that copy.
Concerning the third document, the June 1, 1979 pre-payment plan, appellant makes the same argumentthat being a photocopy it is not the best evidence and is therefore inadmissible.
A copy of the 1979 pre-payment plan was shown to Mr. Roussel. While on the stand, he admitted to being the preparer of that plan and acknowledged that what he was being shown was the plan he had prepared. Mr. Roussel was questioned without interruption as to the contents and meaning of that plan. Appellants did not then object to the document's authenticity or contents. Appellant objected as to the photocopy not being the best evidence only when plaintiff moved to enter it into evidence. The trial court did not commit reversible error in allowing to be placed into evidence a photocopy of a pre-payment plan when the preparer of that plan was placed on the stand, questioned and admitted to the authenticity of the copy.
Appellant next argues that the trial court erred in excluding the testimony of Joseph Barbe on the question of Herbert J. Roussel, Jr.'s intent regarding the purchase agreement. We find no error.
Legal effect to all written contracts will be given in accordance with the true intent *678 of the parties; that intent will be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. LSA-C.C. art. 1901, 1945; West Side Funeral Home, Inc. v. Nicholas, 425 So.2d 837 (La.App. 5th Cir. 1982).
The trial court repeatedly stated that the shareholders' agreement was clear and unambiguous. In denying defendant's request that Mr. Barbe be allowed to testify as to Mr. Roussel's intent, the trial judge stated that he had no difficulty in interpreting the agreement. Where the intent of the parties can be ascertained by analysis of the contract provisions, parol evidence bearing on that intent is inadmissible. Smith v. Moncrief, 421 So.2d 1127 (La.App. 3d Cir.1982). We too find that the provisions of the shareholders' agreement are clear, unambiguous and lead to no absurd consequences. Accordingly, the trial court was correct in not allowing Mr. Barbe to testify as to Mr. Roussel's intent.
Judgment was rendered against Roussel Engineering, Inc. and Herbert Roussel, individually. Appellant, Herbert Roussel, contends that casting him individually liable together with the corporation for a corporate debt was error. Appellee argues, however, that this court should "pierce the corporate veil" solely on the basis that Mr. Roussel is the majority stockholder of Roussel Engineering, Inc. and affirm the judgment as written.
Corporations are distinct entities separate from its shareholders. The shareholders will not be liable for the debts contracted by the corporation except in certain exceptional circumstances. LSA-C.C. arts. 435, 437; LSA-R.S. 12:93(B); Hight Enterprises, Inc. v. Smith and Johnson, 421 So.2d 267 (La.App. 4th Cir.1982); LeBlanc v. OPT, Inc., 421 So.2d 984 (La.App. 3d Cir.1982). An individual's status of being the sole shareholder of a corporation is insufficient to establish the corporation as the individual's alter ego and, hence, insufficient to hold the individual liable for a judgment rendered against the corporation. Hock v. Sea Camper of New Orleans, Inc., 419 So.2d 1315 (La.App. 4th Cir.1982).
Regardless of the basis of piercing the corporate veil, the situation must be viewed with regard to the totality of circumstances present in each case. Whether the corporate veil should be pierced is primarily a finding of fact best made by the trial judge. Liberto v. Villard, 386 So.2d 930 (La.App. 3d Cir.1980); Hight Enterprise, supra; LeBlanc, supra.
In the matter sub judice, no evidence other than Roussel's status as a majority shareholder of Roussel Engineering was presented at trial. This is clearly insufficient to hold Roussel individually liable.
The note upon which appellant reconvened calls for 25 percent attorney's fees on the unpaid balance if issued upon or placed in the hands of an attorney for collection. A balance of $7750 was due and owing on the note. Appellant now asserts the trial court erred in failing to award any attorney's fees. On appeal, Roussel claims 25 percent is reasonable and should be enforced.
Our Supreme Court has held that the courts may inquire into the reasonableness of attorney fees despite a stipulation in the note fixing the fees at a percentage of the amount to be collected. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982)[3] The trial court is in the best position *679 to determine whether a fee is a reasonable fee based upon the factors contained in DR 2-106 of the Code of Professional Responsibility.[4]McCarthy v. Louisiana Timeshare Venture, 426 So.2d 1342 (La. App. 4th Cir.1982).
While we agree with the appellant that the trial court erred in failing to award attorneys' fees as contemplated by the note, we cannot say that 25 percent is reasonable as the record before us provides no reliable basis for setting such fees. We believe the trial court is in a much better position to determine what reasonable fees should be awarded in accordance with counsel's legal skills, experience, the complexity of the litigation, time expended and results achieved.
Accordingly, for the above reasons, the judgment in favor of Agustin Chin and Douglas Lewis against Roussel Engineering, Inc. is affirmed; the judgment, insofar as casting Herbert Roussel individually liable is reversed; and the judgment, insofar as it fails to award Herbert Roussel attorney's fees on the note signed by Douglas Lewis, is reversed and remanded to the trial court for a determination of reasonable attorney's fees. All costs of this appeal are to be paid by appellant Roussel Engineering, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Shareholders' Agreement. Section 5Endorsement on Stock Certificates:

"The shares of stock, represented by this Certificate, are subject to a restriction on the transfer thereof and to a compulsory buy-sell and purchase or redemption agreement between the holder hereof and the Corporation, all in accordance with a Shareholder's Agreement, dated filed in the Corporation's registered office, 3017 Kingman Street, Metairie, Louisiana, where it may be inspected."
[2] Shareholder's Agreement. Section 3A. Obligation to Sell and to Purchase Stock:

"Upon the cessation of employment by the Corporation, disability or death of either Herbert J. Roussel, Jr., Agustin Chin, Robert P. Stoddard or Douglas C. Lewis, the one ceasing such employment or becoming disabled or his estate and his widow and heirs or legatees upon his death shall be obligated to sell all of the shares of stock of the Corporation, owned by him at the time of the occurrence of any such event, on the following terms: ...."
[3] Recent legislation has been enacted whereby a second sentence was added to Civil Code Art. 1935. 1983 Louisiana Acts, No. 483, § 1, amended La.Civ.Code Art. 1935 which now reads as follows:

"The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more. But where the parties, by contract in writing, have expressly agreed that the debtor shall also be liable for the creditor's attorney fees in a fixed or determinable amount, the creditor is entitled to that amount as well." (Emphasis added)
It appears the legislature has exercised its power in response to Leenerts Farms and would challenge the courts' exercising of the inherent constitutional power to regulate the legal profession. As the instant case was decided well before the enactment of the amendment, we need not address these questions here, but for an interesting discussion see Note, Attorney Fees Provisions and Promissory Notes, 44 La.L.Rev. 831 (1984).
[4] 2. DR 2-106 lists the following eight factors to be considered in determining whether an attorney's fees are reasonable:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.