HIGGINBOTHAM, J.
| .¿The defendants, John River Cartage, Inc., John River Aggregate, LLC, Synthetic Aggregates of Louisiana, LLC, and John K. Snyder, Jr., appeal a judgment piercing the corporate veils of John River Cartage, Inc., John River Aggregate, LLC, Synthetic Aggregates of Louisiana, LLC and finding Mr. Snyder personally liable to the plaintiff, Fausse Riviere, LLC (Fausse Riviere), for damages due in accordance with a lease agreement.
FACTUAL AND PROCEDURAL HISTORY
In January 2009, Fausse Riviere, appearing through its sole member and manager, James A. Laurent, leased approximately forty acres of land located in Pointe Coupee Parish to John River Cartage, Inc., appearing through its president, Mr. Snyder, for John River Cartage, Inc.’s aggregate business. The initial term of the lease agreement was from February 1, 2009, until January 31, 2011. On January 21, 2011, the lease was extended for one year by agreement of the parties. On January 31, 2012, Fausse Riviere sent a letter addressed to “John River Aggregate of Louisiana” that again offered to extend the lease for a year. Mr. Snyder, as president of John River Aggregate of Louisiana, accepted the offer and the lease was again extended for a year, until January 31, 2013. During that time, Mr. Snyder filed personal bankruptcy, and in August 2012, Fausse Riviere stopped receiving rental payments. Thereafter, around September 2013, by way of an oral agreement between the parties, Synthetic Aggregates of Louisiana, LLC was substituted as the lessee and the rent was increased so that Synthetic Aggregates of Louisiana, LLC could catch up on rental payments.
Ultimately, Synthetic Aggregates of Louisiana, LLC ran into business difficulties and stopped paying the agreed upon rental payments. Due to the non-payment of rent, Fausse Riviere terminated the lease, and on June 26, 2014, filed a petition seeking back due rent, all cost of restoration of the property, attorney fees, and a writ of sequestration directing the sheriffs office to seize and hold all movables located on the leased premises until further orders of the court.
| sIn its petition, Fausse Riviere named John River Cartage, Inc., John River Aggregate, LLC, Synthetic Aggregates of Louisiana, LLC, and John K. Snyder, Jr., individually, as defendants. The defendants answered the petition and the matter came before the trial court on September 29, 2015. After trial, on October 30, 2015, the trial court rendered judgment in favor of Fausse Riviere and against Synthetic Aggregates of Louisiana, LLC and Mr. Snyder in solido in the amount of $14,000.00 for past due rental payments, and against all defendants in solido in the amount of $80,000.00 to restore the property to the condition it was before the lease, $5,000.00 for attorney fees, and all costs of the proceedings. Additionally, the trial court rendered judgment decreeing that Fausse Riviere “can declare all of the movable property left on the leased property as forfeited by defendants, and therefore become the property of [Fausse Riviere], all as specifically provided in the lease contract.” It is from this judgment that the *1192 defendants appeal citing the following assignments of error:
1. The trial court erred in disregarding the protection against the liability of a member for the debts of the limited liability company afforded by La. R.S. 12:1320 by “piercing the corporate veil” and holding Mr. Snyder, personally liable for the debts of the limited liability company.
2. The trial court erred in finding that the property of the defendants located on the leased premises, which had previously been seized by virtue of a writ of sequestration issued at the request of Fausse Riviere, had been abandoned by the defendants.
3. The trial court erred in failing to require Fausse Riviere to formally exercise its landlord’s lien against the defendant’s movable property located on the leased premises so that the defendants will receive the appropriate credit for the value of the movable property.
LAW AND ANALYSIS
Assignment of Error No. 1: Personal Liability of Mr. Snyder
In its petition, Fausse Riviere contends that John River Cartage, Inc., John River Aggregate, LLC, and Synthetic Aggregates of Louisiana, LLC operated as the alter ego of Mr. Snyder, and therefore, the corporate veils of these business entities should be pierced and Mr. Snyder should be held personally liable for the damages due to Fausse | ¿Riviere. This case involves piercing the corporate veils of John River Cartage, Inc., John River Aggregate, LLC, and Synthetic Aggregates of Louisiana, LLC.
A corporation is a separate entity from its shareholders and a Louisiana limited liability company (LLC) is a separate legal entity from its members. See La. Civ. Code art. 24; Jones v. Briley, 593 So.2d 391, 394 (La. App. 1st Cir. 1991); Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 2011-2254 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598. Corporations and LLCs are recognized juridical persons. See La. Civ. Code art. 24. The role of the corporate identity is perceived as beneficial to business and industry. See Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 1167-1168 (La. 1991).
In narrowly defined circumstances, when individual member(s) of a juridical entity, such as an LLC, mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual membér(s) are held liable under such circumstances, it is said that the court is piercing'the corporate veil. See e.g. Charming Charlie, Inc., 97 So.3d at 598. In Ogea v. Merritt, 2013-1085 (La. 12/10/13), 130 So.3d 888, 895 the supreme court acknowledged that personal liability could be imposed on an LLC member under the jurisprudential doctrine of piercing the corporate veil. However, in that case, the supreme court did not further address the piercing the corporate veil doctrine, because it was neither relied upon by the lower courts nor invoked by the plaintiff. See Ogea, 130 So.3d 895.[1] Only exceptional circumstances warrant disregarding the concept of a corporation or LLC as a separate entity. Riggins, 590 So.2d at 1168; Jones, 593 So.2d at 394. Moreover, *1193 the same policy considerations relevant to a determination of piercing the veil of a corporation also apply to an LLC. Charming Charlie, Inc., 97 So.3d at 598.
The court may pierce the corporate veil under two exceptional circumstances. First, where the shareholders, acting through the corporation, commit fraud or deceit on a third | Bparty, the court will look to the shareholders for justice. Secondly, the court may disregard the corporate identity where shareholders fail to conduct the business on a corporate footing. Such a failure can occur if the shareholder disregarded the corporate formalities to such an extent that the shareholder and the corporation became indistinguishable, or such unity existed that separate individual-ities ceased and the corporation was operated as the “alter ego” of the shareholder. See Riggins, 590 So.2d at 1168.
The determination of whether to allow piercing of the corporate veil is made by considering the totality of the circumstances. Riggins, 590 So.2d at 1169; Jones, 593 So.2d at 394. Some of the circumstances that may point to a disregard of the corporate identity are: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate activities; (3) under-capitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings. Riggins, 590 So.2d at 1168; Jones, 593 So.2d at 395. The involvement in the corporate business of the sole or majority shareholder is insufficient alone to establish a basis for disregard of the corporate entity. See Riggins, 590 So.2d at 1168; See Chin v. Roussel, 456 So.2d 673, 678 (La. App. 5th Cir.), writ denied, 459 So.2d 540 (La. 1984).
The initial burden is on the shareholders to show the existence of a corporation. Once that burden is met, the burden shifts to the challenger or third party to show the exceptional circumstances that must exist to warrant disregard of the corporation’s separate identity. Jones, 593 So.2d at 394. Whether an LLC is an alter ego of its members or whether individual liability should be assigned to a corporation’s shareholder are primarily factual findings subject to the manifest-error standard of review. McDonough Marine Serv. v. Doucet, 95-2087 (La.App. 1 Cir. 6/28/96), 694 So.2d 305, 309-10; Dishon v. Ponthie, 2005-659 (La.App. 3 Cir. 12/30/05), 918 So.2d 1132, 1135 writ denied, 2006-0599 (La. 5/5/06), 927 So.2d 317.
|fiIn Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993), the Louisiana Supreme Court enunciated a two-part test for the reversal of a factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Id. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id.
In the instant case, the defendants established the corporate existence of John River Cartage, Inc., and that John River Aggregate of Louisiana, Synthetic Aggregates of Louisiana, and John River Aggregate were LLCs. The documents of registration with the Louisiana Secretary of *1194 State and other documents demonstrated the existence of the corporation and LLCs. The burden then shifted to Fausse Riviere to show that exceptional circumstances exist warranting disregard of the corporation and LLCs’ separate identity.
In support of the theory that the corporation and LLCs in question were alter egos of Mr. Snyder, Fausse Riviere relies on the manner in which Mr. Snyder commingled the assets and debts of his businesses, and the lack of formality by which Mr. Snyder operated his businesses. Additionally, Fausse Riviere relies on the second extension of the leased property, which was in the name of John River Aggregate of Louisiana and not an LLC or corporation.
During trial, Fausse Riviere’s managing partner, Mr. Laurent, testified that Mr. Snyder sometimes paid the rent owed to Fausse Riviere by personal check. Mr. Snyder acknowledged that he might have paid the rent one time with a personal check, but otherwise he paid with checks of one of his LLCs.
_jjMr. Snyder testified that he did not transfer or sell any of the materials belonging to John River Cartage, Inc. to any of the other entities that were named in the extensions of the lease term. He simply changed the name of the lessee and continued to use the equipment and materials on the leased property without a transfer in any form. There was no lease agreement between the entities over the use of the equipment and there was no transfer or sale of the materials that were used in making the products that Mr. Snyder was selling. Mr. Snyder testified that he had several companies and “all of the companies ran together and [he] ran all of them.” During cross examination, Mr. Snyder did not remember that John River Aggregate, LLC and John River Aggregate of Louisiana, LLC were two distinct entities, and he thought they were the same entity. "Mr. Snyder acknowledged that because he had so many different entities he was not aware of whether they were in good standing. Additionally, he was not aware that John River Aggregate of Louisiana, LLC was inactive because of action by the Secretary of State. Clearly, the evidence supports a finding that these businesses were not operated as separate entities from each other or from Mr. Snyder, and there was significant commingling of assets.
In the second offer and acceptance of an extension of the lease prepared by Mr. Laurent, the letter was addressed to John River Aggregate of Louisiana and was also identified in that way by Mr. Snyder’s acceptance of the extension. There was conflicting testimony as to why this extension was not made through an LLC. Mr. Laurent testified that Mr. Snyder gave him the name of the entity for the extension and did not state whether it was an LLC or corporation. Mr. Snyder testified that he told Mr. Laurent that the entity was an LLC and did not add LLC to the extension before signing it because he and Mr. Laurent were good friends and he did not look closely at the lease extension before accepting it. The trial court apparently believed the testimony of Mr. Laurent and stated that it presumed John River Aggregate was a sole proprietorship.
At the end of the hearing, the trial court observed that Mr. Snyder:
[H]as various companies out there which are also proprietors and he seems to use them haphazardly and use their assets interchangeably amongst themselves without the necessity of following normal accounting and/or | «legal methodology. He just jumps back and forth between whatever name he decides to use at a particular point in time, whether the assets he’s using are not the assets he’s *1195 using. He’s even paid rent due with a personal check.
After reviewing the entire record in the instant case and considering the totality of the circumstances, we find that there is a reasonable basis in the record for the trial court’s finding that exceptional circumstances existed to pierce the corporate veils of John River Cartage, Inc., John River Aggregate, LLC, and Synthetic Aggregates of Louisiana, LLC, and find Mr. Snyder personally liable to Fausse Riviere for the debts incurred. As such, we cannot say that the trial court’s finding is manifestly erroneous or clearly wrong.
Assignment of Error Nos. 2 and 3: The Movable Property
In the judgment, the trial court ordered that Fausse Riviere could declare all of the movable property left on the leased property as forfeited by the defendants, and therefore the property of Fausse Riviere as specifically provided in the lease contract. The original lease provided:
At the end of the lease, Lessee shall also immediately remove any equipment or other movable items located on the leased premises which are not the property of Lessor. If Lessee fails to do so, Lessor may have the equipment or other movable items removed from the leased premises at Lessee’s expense, or, at the sole option of Lessor, declare said equipment and other movable items abandoned and forfeited to Lessor, in which case Lessor may sell or dispose of the equipment or other items and retain all payments or proceeds received therefor. Each extension entered into by the parties was made on the “same terms and conditions” as the original lease. The defendants argued that the movable property was not abandoned, because they were prevented from removing the property, as it had been seized under the writ of sequestration. Fausse Riviere contended that the lease expired at the end of December 2013 and therefore, Mr. Snyder had nearly six months to remove the property before it filed for the writ of sequestration on June 24, 2014.
Initially we note, because of the oral nature of the lease extension, that the record was not immediately clear regarding when the lease was terminated or that the defendants had an opportunity to remove the movable items prior to the issuance of the writ of sequestration. -However, Fausse Riviere repeatedly indicated that the lease was continued Rafter the expiration of the oral lease extension in December of 2013.[2] In paragraph six of its petition, Fausse Riviere alleged: “By agreement in September of 2013 ... the parties extended the Lease Agreement to December of 2013, at a monthly rental of $2,000.00 per month, and then the parties agreed to reduce the monthly rental amount [to] $1,500.00 per month. In its appellate brief, Fausse Riviere maintains: “Then, in September of 2013, by oral agreement ... the lease agreement - was extended to December of 2013, at a monthly rental of ... [$2,000.00] per month, and later the parties to this letter agreement *1196 extension, agreed to reduce the monthly rental to ... [$1,500.00] per month.”
Furthermore, there is significant evidence in the record tending to establish that the lease could not have been terminated before the end of April of 2014.[3] Most notably, the sole member and manager of Fausse Riviere, Mr. Laurent, testified at trial that Mr. Snyder leased the property at issue in order to put an aggregate plant on the property, and stated that Mr. Snyder used the property to produce and sell aggregate until April of 2014. The following colloquy concerning the use of the leased property took place on cross-examination:
[Defense counsel]: And then that’s what he would sell, that was the product that he sold—
[Mr. Laurent]: Correct, sir.
[Defense counsel]:—to the public and he did that from the date of this lease?
[Mr. Laurent]: 2009 to April of 2014.
Following the conclusion of the trial on the merits, the trial court ultimately awarded Fausse Riviere, amongst other things, $14,000.00 in past due rent. The trial court’s award of past due rent is equal to the prayer for relief and amounts to the sum of | m$2,000.00 per month for September, October, November, and December of 2013, and $1,500.00 per month for January, February, March, and April of 2014.
Thus, the evidence in the record does not support Faussé Riviere’s assertion that the lease was terminated in December of 2013 or that the defendants had six months to remove their movable property from the leased premises.
Notwithstanding our conclusion regarding the date of the termination of the lease, the defendants did not immediately remove all equipment or other movable property located on the leased premises at the end of the lease. Thus, the operative question remains whether the trial court properly interpreted and applied the forfeiture clause of the original lease contract under the facts of this case.
The forfeiture clause of the original lease contract, as quoted above, provided Fausse Riviere with the option to declare any equipment and other movable items remaining on the leased premises at the end of the lease as abandoned and forfeited, in which case Fausse Riviere was entitled to sell or dispose of the property and retain all payments and proceeds. The record clearly establishes that Fausse Riviere did not exercise its option to sell or dispose of the equipment and other movable property left on the leased premises, but instead elected to have the movable property seized pursuant to a writ of sequestration in order to preserve its lessor’s lien and privilege.
The relevant provisions of the Louisiana Civil Code and Louisiana Code of Civil Procedure governing the lessor’s privilege and writs of sequestration are as follows:
To secure the payment of rent and other obligations arising from the lease of an immovable, the lessor has a privilege on the lessee’s movables that are found in or upon the leased property....
La. Civ. Code art. 2707.
The lessor may seize the movables on which he has a privilege while they are in or upon the leased property, and for fifteen days after they have been removed if they remain the property of the lessee and can be identified.
*1197 The lessor may enforce his privilege against movables that have been seized by the sheriff or other officer of the court, without the necessity of a further seizure thereof, as long as the movables or the proceeds therefrom remain in the custody of the officer.
|nLa. Civ. Code art. 2710.
When one claims the ownership or right to possession of property, or a mortgage, security interest, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.
La. Code Civ. P. art. 3571.
A writ of attachment or of sequestration shall issue only when the nature of. the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.... La. Code Civ. P. art. 3501.
A writ of sequestration to enforce a lessor’s privilege shall issue without the furnishing of security.
La. Code Civ. P. art. 3575.
The writ of sequestration is an extremely harsh remedy. Burton v. Jardell, 589 So.2d 610, 613 (La. App. 2d Cir. 1991) (addressing same in the context of a writ of sequestration obtained to protect lessor’s lien). The writ of sequestration can only be maintained when the formalities of the law have been strictly complied with by the party seeking the writ. Id. (citing Matherne v. Estate of Matherne, 341 So.2d 1254, 1257 (La. App. 1st Cir. 1976), writ denied, 343 So.2d 1072 (La. 1977)). It is a prerequisite to the issuance of the writ of sequestration that the proper grounds be alleged in the petition. Matherne, 341 So.2d at 1257 (addressing same in the context of a writ of sequestration obtained to protect a claim against a succession).
In the case at bar, Fausse Riviere did not seek invocation of the forfeiture clause of the original lease contract or claim that the defendants had abandoned movable property on the leased premises in its petition for back due rent and writ of sequestration. Rather, Fausse Riviere submitted that a writ of sequestration should be issued to enforce its lessor’s privilege on grounds that the movable property at issue remained in the possession and control of the defendants. In' paragraph thirteen of its petition, Fausse Riviere stated:
| i2Plaintiff has a lessor’s lien and privilege on all the movables located in and on the leased premises to secure plaintiffs claims for rent, cost of restoration of the property as well as all other sums due, together with attorney’s fees and costs due to petitioner under the said lease. All of these movables are in the . possession of the defendants; and it is within the defendants^] power to, and plaintiff has good reason to believe that the defendants will, conceal, dispose- of, or remove these movables from the parish during the pendency of the suit. To protect plaintiffs rights, it is necessary that a writ of sequestration issue, without bond, directing the sheriff to seize all of the movables affected by plaintiffs privilege, and to hold them subject to the further order of the court.
Moreover, in its prayer for relief, Fausse Riviere did not seek to have the movable property at issue declared forfeited and abandoned, but instead requested the trial court issue and maintain the writ, of sequestration to enforce its lessor’s privilege. In its prayer for relief, Fausse Riviere stated, in pertinent part, as follows:
WHEREFORE, PETITIONER ... PRAYS that a Writ of Sequestration *1198 issue herein, without bond and according to law, directing the sheriff to seize, and to hold subject to the further order of the court, all of the movables located on the leased premises.
[[Image here]]
PETITIONER FURTHER PRAYS for judgment maintaining the Writ of Sequestration, and recognizing plaintiffs lessor’s lien and privilege on the property sequestered.
On June 24, 2014, the date the petition for back due rent and writ of sequestration was filed, the trial court signed the order granting the writ of sequestration and directing the sheriff to hold all of the movables located on the leased premises subject to further order of the court.
The testimony introduced at trial concerning the writ of sequestration and the forfeiture clause confirms that Fausse Riv-iere elected to have the movables seized pursuant to a writ of sequestration in order to protect its lessor’s lien and privilege. For example, Mr. Laurent testified that Fausse Riviere requested the writ of sequestration in order to have the value of the movables applied to the amounts due to Fausse Riviere under the lease agreement. The following colloquy concerning the forfeiture clause and the writ of sequestration took place during direct-examination:
| ^[Plaintiff s counsel]: Under the provisions of the lease it also provided that should any claims be made that you would be reimbursed for attorney’s fees and costs, is that not correct?
[Mr. Laurent]: Correct.
[Plaintiffs counsel]: Okay. Also under Paragraph 4 of the lease I believe it also stated that if any moveable [sic] items were left on the leased premises that you could basically just go in and have them declared forfeited to you, is that correct?
[Mr. Laurent]: Well, I had to put a sequestration on what was out there to protect myself, yes.
[Plaintiffs counsel]: Yes, sir. But under the provisions of the lease if it was left out there the leased provided that those items were abandoned and forfeited to the lessor, is that correct?
[Mr. Laurent]: Well, as far as I know, yes, sir.
[Plaintiffs counsel]: And you’re here today asking the Court to award you all of the damages that you’re entitled to, is that not correct?
[Mr. Laurent]: Yes, sir.
[Plaintiffs counsel]: Including attorney’s fees and costs?
[Mr. Laurent]: Yes, sir.
[Plaintiffs counsel]: And you’re asking the Court to keep in effect the writ of sequestration and allow it to apply to your lessor’s lien and privilege for the amounts due under the lease agreement, is that correct?
[Mr. Laurent]: Yes, sir.
In sum, Fausse Riviere sought and obtained a writ of sequestration to protect and preserve its lessor’s privilege, to secure the payment of rent and other obligations arising from the lease agreement, and on grounds that the movable property at issue remained in the possession and control of the defendants. The writ of sequestration was issued and maintained, without the necessity of the furnishing of security, based upon the specific facts alleged in the petition. See La. Code Civ. P. arts. 3501, 3571, and 3575.
Fausse Riviere did not pursue the remedy of abandonment, nor was any evidence presented to establish that the defendants abandoned the movables located on the leased premises. Consequently; Fausse Riviere is judicially estopped from post factum invocation of the forfeiture clause *1199 of the original lease contract, and the defendants are | uentitled to a credit equal to the value of the movable property seized pursuant to the writ of sequestration.
Thus, we reverse the portion of the judgment ordering that Fausse Riviere could declare all of the movable property left on the leased property as forfeited by the defendants, and therefore the property of Fausse Riviere. The defendants are entitled to a credit equal to the value of the movable property seized pursuant to the writ of sequestration.
CONCLUSION
For the foregoing reasons, the portion of the judgment of the trial court ordering that Fausse Riviere could declare all of the movable property left on the leased property as forfeited by the defendants, and therefore the property of Fausse Riviere, is reversed, and the defendants are entitled to a credit equal to the value of the movable property seized pursuant to the writ of sequestration. In all other respects, the judgment of the trial court is affirmed. All costs of this proceeding are to be divided between plaintiff-appellee, Fausse Rivi-ere, LLC and defendant-appellants, John River Cartage, Inc., John River Aggregate, LLC, Synthetic Aggregates of Louisiana, LLC, and John K. Snyder Jr.
AFFIRMED IN PART AND REVERSED IN PART.

. Unlike in this matter, in Ogea v. Merritt, 130 So.3d at 895 n.5, the supreme court did not further address the piercing of the corporate veil doctrine, because it was neither relied upon by the lower courts nor invoked by the plaintiff.

. Although the oral lease extension expired at the end of December of 2013, a lease with a fixed term may be extended beyond the expiration of the term if the lessee remains in possession of the leased property for a certain amount of time. Louisiana Civil Code art. 2721 states that a lease with a fixed term is extended, i.e„ “reconducted,” if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession: 1) for thirty days in the case of an agricultural lease; 2) for one week in the case of other leases with a fixed term longer than a week; or 3) for one day in the case of a lease with a fixed term that is equal to or shorter than a week.

. There is also evidence indicating that the lease may not have been terminated until the end of May of 2014. For example, in its post-trial memorandum, Fausse Riviere stated: "Due to the non-payment of rent, the lease and the extensions were terminated as of May 31, 2014, [and] [p]etitioner proved that at the time of termination, May 31, 2014, the amount of the past due rentals totaled ... $14,000,00[J”