308 So.2d 889 (1975)
ALTEX READY-MIXED CONCRETE CORP.
v.
The EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY et al.
GILLESPIE LUMBER & SUPPLY CO., INC.
v.
The EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY et al.
Nos. 10157, 10158.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 10, 1975.
Writ Refused May 30, 1975.
*890 Erwin A. LaRose, Baton Rouge, for defendant-appellant Tessitore in 10157 and 10158.
E. Drew McKinnis, Baton Rouge, for plaintiffs-appellees Altex and Gillespie in 10157 and 10158.
Charles S. McCowan, Jr., Baton Rouge, for appellee Thomas F. Roberds and Employers Comm. Union Ins. Co. in 10157.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
ELLIS, Judge.
Mid-South Metal Building Corporation was a sub-contractor on a job for the Georgia Pacific Company, under Thomas F. Roberds, the prime contractor. Plaintiffs Altex Ready-Mixed Concrete Corp. and Gillespie Lumber & Supply Co., Inc. furnished materials to Mid-South. Mid-South was scheduled to draw about $95,000.00 of the money due it under its subcontract on August 25, 1971. Before releasing those funds, Roberds required evidence that all labor and materials used in the job had been paid for. Mid-South did not have the funds to pay its suppliers.
On August 23, 1971, a check for $12,726.59, dated August 31, 1971, was tendered to Altex, which was asked to execute a waiver and release of lien. Altex refused, and, on the next day, a second check on Mid-South's account in the same amount dated August 24, 1971, was delivered by Nick Tessitore, Jr., the treasurer and a director of Mid-South. Altex accepted the check and executed the release.
On August 24, 1971, two checks on Mid-South's account, dated August 31, 1971, totalling $875.54, the total amount due Gillespie, were tendered to it by Mr. Tessitore. Gillespie accepted the checks, and executed a lien release form.
The Altex check was deposited on September 3, 1971, and the Gillespie check on September 17, 1971. Both were returned marked N.S.F. These suits were filed against Mr. Roberds, The Employers Commercial Union Insurance Company, Mid-South, and Mr. Tessitore to recover the sums of $14,210.58, allegedly due Altex and $875.54 due Gillespie. Roberds and Employers were voluntarily dismissed from the suits by plaintiffs, and service was never made on Mid-South, which was defunct. The sole question presented on the trial was whether or not Mr. Tessitore was personally liable for the debts owed to plaintiffs by Mid-South. After trial on the merits, judgments were rendered in favor of plaintiffs and against Mr. Tessitore in the amounts of the checks delivered by him, and he has appealed.
Mr. Tessitore testified that he was an errand boy for the corporation, and not very familiar with its operations. He said he was instructed to deliver the checks to plaintiffs and pick up the lien release, and that is all he did. He stated that he made no representations concerning the validity of the checks.
Mrs. Hebert, Altex's office manager, testified that Mr. Tessitore assured her that the August 24, 1971, check was good. Mr. Ward, Altex's vice-president, stated that Mr. Tessitore personally guaranteed that the check was good.
*891 Robert Gillespie testified on behalf of Gillespie that he signed the lien release on behalf of his company only after being assured by Mr. Tessitore that the post dated check would be honored when presented.
Other evidence in the record shows that Mid-South was in poor financial condition at that time, and was borrowing money to meet its current operating expenses. It held regular board meetings, at all of which Mr. Tessitore was present. Mr. Tessitore, as the treasurer, signed all checks. The financial condition of the corporation was discussed at every board meeting, and we find that Mr. Tessitore was quite familiar with it.
The August 4, 1971, minutes reveal that $60,000.00 was owed to a bank and $23,000.00 to Mr. Tessitore and his corporation, Cloverleaf Shopping Center. The minutes showed that $100,000.00 had been drawn on the Georgia Pacific job and that $231,000.00 would be due on its completion, which was estimated to be in three or four weeks. It further appeared that the corporation needed to borrow money to meet its payroll.
On August 25, 1971, Mr. Roberds paid $95,088.41 to Mid-South and the checks representing same were deposited in its account at Fidelity National Bank. On the same day, the Mid-South account was charged $30,460.00 to pay a note owed the bank and $11,025.00 to pay two notes which had been signed by Mr. Tessitore. In addition, $22,500.00 was transferred to the account of Cloverleaf Shopping Center as per instructions from Mr. Tessitore.
The minutes of a board meeting of Mid-South, held August 26, 1971, reflect the above payments, plus a $30,000.00 payment to "Pendarvis", who is not otherwise identified. The minutes further reflect debts totalling $89,550.00 to various suppliers and other persons, including plaintiffs, and additional liabilities of $48,000.00 to the bank.
On August 30, 1971, the minutes reflect that bankruptcy for the corporation was discussed and authorized. In addition, all further proceeds from the Georgia Pacific job were to be assigned either to the shareholders of Mid-South or to the bank. On September 6, 1971, Roberds was advised that Mid-South was abandoning the job.
The record further reflects that the officers and directors of Mid-South, including Mr. Tessitore, had personally endorsed all of the corporation's notes at the Fidelity National Bank.
The trial court found that, because there were additional funds which would become due if the Georgia Pacific job were completed, there was a possibility that plaintiffs might be paid and that Mr. Tessitore was therefore not guilty of fraud. He further found that Mr. Tessitore operated within the corporate framework of Mid-South, and that he was not the alter ego of the corporation. However, he found that Mr. Tessitore had personally assumed payment of the corporate checks by assuring the plaintiffs that they were or would be good.
Article 2278 of the Civil Code provides, in part, as follows:
"Parol evidence shall not be received:
"3. To prove any promise to pay the debt of a third person."
Parol evidence may not be used to establish either suretyship under Articles 3035 et seq. of the Civil Code or the promise to pay the debt of another under Articles 1890 and 1902 of the Civil Code, even when admitted without objection. See Levy & Dieter v. Du Bois, Lowe & Foley, 24 La.Ann. 398 (1872). It is not pretended that Mr. Tessitore gave any other verbal assurances as to the validity of the checks. He can not, therefore, be found to have assumed payment thereof as a matter of law.
Under the Civil Code, corporations are separate legal entities, and their shareholders can not be individually compelled to pay the debts of the corporation. Articles 435 and 437, Civil Code. However, *892 officers, directors and shareholders of a corporation can become personally liable to those who suffer loss because of fraudulent misrepresentations made by the officers, directors or shareholders on behalf of the corporation. R.S. 12:95; Texas Industries, Inc. v. Dupuy & Dupuy Develop., Inc. 227 So.2d 265 (La.App. 2 Cir. 1969).
Fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another, and to obtain some unjust advantage or to cause loss or inconvenience to the other. Article 1847, Civil Code. Article 1848 of the Civil Code provides:
"Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
We think it clear that Mr. Tessitore knew that the checks would not be paid when he gave assurances that they were good. He must have known that the obligations to the Fidelity National Bank, to Cloverleaf Shopping Center, and to himself, were to be paid first. Although the $30,000.00 payment to "Pendarvis" is not explained, it was made, and the $95,088.41 was almost entirely depleted as a result. The minutes of the corporation of August 26, 1971, the day the $95,088.41 was received, do not indicate that payment had been made to plaintiffs, although checks had been given them. It is clear that the corporation did not consider that they had been paid.
We therefore find that Mr. Tessitore, acting on behalf of Mid-South, knowingly misrepresented the validity of the checks tendered to plaintiffs. As a result, plaintiffs surrendered their lien rights, which would have made payment of their accounts certain. As a further result, the $95,088.41 was paid, and Mid-South's obligations to Mr. Tessitore and Cloverleaf Shopping Center were satisfied therefrom. In addition, Mr. Tessitore was relieved of his contingent liability to Fidelity National Bank.
We think that these circumstances, which have been proved by a preponderance of the evidence, are sufficient to constitute fraud on the part of Mr. Tessitore, and to render him personally liable for the loss caused thereby to plaintiffs.
The judgments appealed from are therefore affirmed, at defendant's cost.
Affirmed.