386 So.2d 930 (1980)
Charles L. LIBERTO, Jr., Plaintiff-Appellant,
v.
Joseph VILLARD and Mucavil, Inc., Defendants-Appellees.
No. 7534.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
*932 Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellant.
Foote, Ledbetter & Percy, George Foote and James M. Percy, Alexandria, for plaintiff-appellee.
Gravel, Roy & Burnes, Dan E. Melichar, Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Gold, Little, Simon, Weems & Bruser, F. A. Little, William E. Skye, Alexandria, for defendants-appellees.
Before SWIFT, STOKER and LABORDE, JJ.
STOKER, Judge.
Plaintiff-appellant, Charles L. Liberto, was the general contractor for a construction project undertaken by Mucavil, Incorporated. Liberto brings suit here against that corporation and two of the three shareholders in the corporation for breach of the construction contract between himself and the corporation. The two shareholder defendants[1] are Joseph Villard and Jack Mule, Jr.
Plaintiff Liberto alleges the trial court erred:
(1) in dismissing his claims against shareholders Joseph Villard and Jack Mule individually,
(2) in not finding that Joseph Villard made the corporation his alter-ego by disregarding the corporation's existence as a separate entity, thus subjecting himself to personal liability for the debts of the corporation,
(3) in not finding that Villard induced Liberto to enter the contract by making material misrepresentations in regard to financing of the project,
*933 (4) in finding the price agreed to by contract between Liberto and Mucavil was $643,000.00 instead of $812,000.00,
(5) in failing to find an amount of expense and labor owed Mr. Liberto at the time work stopped on the project,
(6) in not awarding to Liberto the attorney's fees and costs incurred by him in defending subcontractors' and materialmen's suits arising from defendant's breach of the contract, and
(7) in not awarding to Liberto an amount to compensate him for the loss of income he sustained as a result of the defendant's breach of the construction contract.

FACTS
On August 28, 1974, appellant Charles L. Liberto, Jr., entered into a written contract with Mucavil, Inc., to construct a shopping center in Alexandria, Louisiana, to be known as "MacLee Plaza". Mucavil, Inc., is a Louisiana corporation domiciled in Rapides Parish and owned by three shareholders, Dr. Joseph Villard, Jack Mule, Jr., and Wayne Cave. The terms of the written contract between Liberto and Mucavil provided for a construction price of $643,000.00 with a 10% profit for the general contractor Liberto.
Construction was begun on the shopping center in August, 1974, and continued until the first week in December, at which time the interim lending institution, the Rapides Bank and Trust Company, withdrew financing for the project. As a result, a number of legal actions were commenced, five of which have been consolidated in this appeal. At the time the financing by Rapides Bank was terminated Mr. Liberto had received three payments toward the expected $643,000.00. The three payments totalled $142,452.00.
After the bank's refusal to fund any further construction, various laborers and materialmen filed liens which were followed by lawsuits to collect sums due them for work performed or materials furnished in connection with the shopping center. The subcontractors and materialmen whose claims are involved in this consolidated litigation include Russell Rabalais,[2] Texas Industries, Inc.,[3] and Flynn Manufacturing Company of Alexandria.[4] All of these subcontractors and furnishers of material filed suit against (1) Mucavil, Inc., as owner of the project; (2) Liberto, the general contractor; and (3) Liberto's bonding company, American Employer's Insurance Company.
Liberto himself filed suit against Mucavil, Inc., for damages for breach of contract, costs incurred in defending the various subcontractors' suits brought against Liberto, future loss of construction income, and general damages for embarrassment and mental anguish. In his suit Liberto also sued Dr. Joseph Villard and Jack Mule in their individual capacities, seeking to "pierce the corporate veil" and hold them (particularly Villard) individually responsible on the grounds that the corporation was merely the alter-ego of Villard and that Villard had made misrepresentations concerning the interim financing for the project, thereby inducing Liberto to enter into the construction contract.
Additionally, in the subcontractors' suits against him, Liberto filed third party demands against Mucavil, Inc., Villard, and Jack Mule individually asking for judgment over and against all of these defendants for any amounts for which he might be cast. Again, on the third party demands, Villard and Mule were sought to be held personally liable. In addition to being shareholders in Mucavil, Inc., Dr. Villard was president and Jack Mule was secretary of the corporation.
The district court ruled in favor of the subcontractors and suppliers. Texas Industries won against Liberto and American Employers Insurance Company. Flynn Manufacturing was awarded judgment *934 against Liberto, Mucavil, and American Employers. In the Rabalais suit, judgment was awarded against Liberto and American Employers.
In all of the above mentioned judgments obtained by the subcontractors, suppliers and Liberto's bonding company, judgment was also rendered in favor of Liberto on his third party demands against Mucavil, Inc., but all claims on his third party demands against Villard and Mule, individually, were denied.
In Liberto's suit against Mucavil, Inc., and Dr. Joseph Villard, judgment was rendered in plaintiff's favor and against Mucavil, Inc., in the amount of $60,058.80 for lost profits on the contract, but the court denied plaintiff's claim against Joseph Villard and Jack Mule individually. The court further dismissed Liberto's claims for general damages for mental anguish, humiliation, etc., and for the lost profits he claims he would have earned on future construction jobs.
Thus, Liberto obtained judgment against Mucavil, Inc., in his own suit for lost profits on the contract and obtained judgments on this third party demands against Mucavil, Inc., for all sums for which he was cast to his subcontractors and his bonding company.
Appeal is brought here by Liberto in his suit against Villard and Mucavil. As part of this appeal, he challenges the trial court's finding of the contract price as $643,000.00 instead of $812,000.00. He also appeals the denial of his third party demands against Villard, individually, in the two suits of the subcontractor, Texas Industries (suits numbered 7535 and 7536 in this court), and in the suit of subcontractor Flynn Manufacturing Company, Inc., (suit number 7533).

I.
Did the trial court err in not finding that Villard induced Liberto to enter the contract by making material misrepresentations in regard to the financing of the project and in finding the price agreed to by contract between Liberto and Mucavil was $643,000.00 instead of $812,000?[5]
The above stated issues cover plaintiff-appellant's third and fourth assignments of error. They are dealt with together here because they arise from similar fact situations, and they are answered by this court in the same manner.
The trial court found no material misrepresentations by Dr. Villard. It appears from the record that he was dealing with Liberto in good faith, not anticipating any sudden, unforeseen problem such as the complete withdrawal of funding by Rapides Bank.
Appellant claims Villard personally guaranteed any interim financing necessary to secure an agreed contract price of $812,000.00. Defendant-appellee remembers no such personal guarantee and argues that the contract price agreed to was $643,000.00, exactly as stated in the written contract. Liberto cites LSA-C.C. article 934 for the proposition that in an action for breach of contract the damages due are the amount of loss sustained and the profit of which the contracting party is deprived. Thus, Liberto contends he would have earned a profit in the amount of $81,200.00 (10% of $812,000.00) had the job been completed. We agree with the finding of the trial court:
From the testimony the Court is not convinced that the parties agreed upon a contract price of $812,000. There may have been some discussion of the cost exceeding the stated contract price, but the court feels that it was in the nature of a contingency or possibility rather than a term on which there was a meeting of the minds.
The trial court made conclusions as to the facts presented by the third and fourth assignments of error. Plaintiff bore the burden of proof to show verbal alteration of the written contract. The trial court found that plaintiff failed to carry this burden. We simply follow the basic *935 rule of appeal in Louisiana and give great weight to the factual conclusions of the trier of fact. Canter v. Koehring, Co., 283 So.2d 716 (La.1973). As stated by the Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), "the appellate court should not disturb such a finding of fact unless it is clearly wrong". A full review of the record does not show the trial court was clearly wrong.

II.
Should the trial court have found, in the words of the plaintiff-appellant, an amount of expenses and labor owed to Mr. Liberto at the time work stopped on the project?
This question is reflected in plaintiff-appellant's fourth assignment of error. The trial court answered it aptly in its reasons for judgment:
From the evidence the Court cannot tell with any certainty the amount of "the expense and labor already incurred" by Liberto with the exception of the subcontractors whose claims have been adjudicated, with Liberto's liability being passed onto Mucavil.
This court agrees with the trial court that there is insufficient evidence in the record to support this contention of plaintiff-appellant.

III.
Did the trial court err in not awarding to Liberto the attorney's fees and costs incurred by him in defending various subcontractors' suits arising from defendant's breach of the construction contract?
This assignment of error (plaintiff-appellant's sixth) can be quickly dismissed, because expenses incurred in preparing a law suit are not recoverable as damages. Acme Steel Company v. A. J. Warehouse, Inc., 212 So.2d 271 (La.App. 4th Cir. 1968); Universal C. I. T. Credit Corp. v. Jones, 47 So.2d 359 (La.App. 2nd Cir. 1950), and it is well established that the general rule in Louisiana is that attorney fees are not allowed except where authorized by statute or contract. Nassau Realty Co., Inc. v. Brown, 332 So.2d 206 (La.1976); Morein v. G. J. Deville Lumber Co., 215 So.2d 208 (La.App. 3rd Cir. 1968).

IV.
Did the trial court err in not awarding Liberto an amount to compensate him for the loss of income he sustained as a result of the defendant's breach of the construction contract?
Mr. Liberto also testified that, as a result of the defendant's breach and the resulting litigation of this claim, his business income has been affected substantially. In 1974 he made a net income for the construction business of $45,738.12. He was out of business for the years 1975, 1976, and 1977. Liberto claims this was due to his inability to obtain a bid or performance bond or interim financing to perform construction projects. This inability, he contends, was a direct result of the failure of the MacLee project.
Again, we agree with the trial court. The court felt that this claim (plaintiff-appellant's seventh assignment of error) was too speculative and conjectural for an assessment of damages. The only proof which might be used as a guide to what Mr. Liberto's income would have been had there been no breach of the contract was his testimony and a statement of the earnings of the construction company during the previous year. We find that the trial court was not clearly wrong in holding Liberto had failed to show sufficient proof for an award of damages for loss of income.

V.
Did the trial court err in dismissing its claims against shareholders Joseph Villard and Jack Mule individually and in not finding that Joseph Villard made the corporation his alter-ego by disregarding the corporation's existence as a separate entity, thus subjecting himself to personal liability for the debts of the corporation?
The primary contention in this case is included in the above statement, which is comprised of appellant's first two assignments *936 of error, and is dealt with last in this opinion. The question is basically whether plaintiff-appellant can "pierce the corporate veil," thus subjecting Joseph Villard and Jack Mule, Jr., to individual liability.
It is a fundamental legal principle that a corporation is a distinct legal entity, separate from the individuals who comprise it. LSA-C.C. art. 435, 437; LSA-R.S. 12:93(B). In a few limited situations a party can reach an individual shareholder by "piercing the corporate veil", making the individual liable for debts incurred by the corporation. This can be done when a shareholder practices fraud upon a third person through the corporation or disregards the corporate entity to such an extent that the individualities of the corporation and shareholder cease to exist; the corporation no longer exists as an individual distinguishable from the shareholder. When a party seeks to pierce the corporate veil, the situation must be viewed with regard to the totality of the circumstances. Whether individual liability will be assigned to shareholders is primarily a factual finding to be made by the trial court. In Louisiana the concept of the corporation as a separate entity is felt to be beneficial and is disregarded only in exceptional circumstances. Kingsman Enterprises v. Bakerfield Electric Co., 339 So.2d 1280 (La.App. 1st Cir. 1976).
Plaintiff-appellant listed numerous factors he felt should lead the court to pierce the corporate veil and assign individual liability to Villard and Mule. Much emphasis is placed on Villard's handling of money and commingling of his funds and those of the corporation, a factor the courts have used in the past in piercing the corporate veil. We agree with the findings of the trial court that although there were instances in which money was transferred from corporate accounts to Villard's personal accounts, this was not improper because these transfers were to reimburse him for money he had spent on corporate obligations. The record reveals that defendant-appellee spent his personal funds to keep the corporation going. He testified that his investment totalled $450,000.00, and that he has never received a single dividend. It is quite evident in an examination of the record that, although there might be some discrepancy or confusion in Villard's records, he clearly invested much more of his personal money in the corporation than he was ever reimbursed. Thus, the entire rationale behind piercing the corporate veil is absent in this case. The basic justification for piercing the corporate veil is to prevent defrauding of creditors. Villard was not using Mucavil as a tool to protect himself from liability. Instead, he was voluntarily investing great amounts of his personal funds to try and keep the corporation going; funds which have been written off as a loss since the corporation stock is now worthless.
Some of the other circumstances which have in the past justified piercing the corporate veil include failure to maintain separate bank accounts and undercapitalization. Kingsman Enterprises v. Bakerfield Electric Company, supra. In the present case, Mucavil maintained separate bank accounts and financial records apart from any individuals who were officers or shareholders. The corporation was not undercapitalized, since Villard invested $171,000.00 at the corporation's inception. Liberto also complains that Villard personally obligated himself for debts incurred by the corporation. This is explained by the fact that sometimes Villard became obligated when the property was still owned by him. At other times, he would personally endorse corporate obligations which is a common practice among officers and shareholders of small corporations.
Another fact pointed to by Liberto as a reason to pierce the corporate veil was one instance of the mortgaging of corporation-owned property to secure a personal loan. The record reveals this was a good faith error of Villard caused by a mistake of his attorney.
Keeping in mind the reluctance of Louisiana courts to disregard corporate status except in exceptional circumstances, we *937 find, in light of all of the facts and the totality of the circumstances in this case, that the trial court was correct in denying plaintiff-appellant's claim and finding in favor of defendant-appellee.
AFFIRMED.
NOTES
[1] This appeal was consolidated with four others (numbers 7533, 7535, 7536, and 7537). Separate opinions will be rendered in each. [386 So.2d 937, 937, 938, 938.]
[2] Suit number 7537, 386 So.2d 938, in this court.
[3] Suit number 7535, 386 So.2d 937, and number 7536, 386 So.2d 938, in this court.
[4] Suit number 7533, 386 So.2d 937, in this court.
[5] Each of plaintiff-appellant's assignments of error will be dealt with in this opinion, but they will not be dealt with in the order in which they were listed.