535 So.2d 918 (1988)
Ansel CHANEY d/b/a Chaney Media Brokers and Recardo A. Foy, Plaintiffs-Appellants,
v.
Wesley GODFREY, William Monroe Hilry Huckaby, III, Henry Cotton and Benton Broadcasting Corporation, Defendants-Appellees.
No. 19901-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
*919 Pringle & Herzog by R. Perry Pringle, Shreveport, for plaintiffs-appellants.
Charles D. Jones, Monroe, for defendants-appellees.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiffs Recardo A. Foy and Ansel Chaney brought this suit against the Benton Broadcasting Corporation and its four shareholders for the breach of an alleged contract under which Foy was to acquire radio station KDKS which was owned by the corporation. The trial court rejected the plaintiffs' claim for specific performance and damages. We affirm.

FACTS
Defendants Wesley Godfrey, William Monroe, Hilry Huckaby, III, and Henry Cotton are the sole shareholders, sole directors and sole officers of Benton Broadcasting Corporation. At the time of the transaction in question, each owned twenty-five percent of the outstanding stock. In early 1985, they voted, three to one, to allow Huckaby to solicit a buyer for KDKS. They authorized him to list the property with American Media Brokers. Godfrey was the sole dissenter.
Prior to this time, in late 1984, Foy, a broadcaster from the northeast United States, learned that KDKS was for sale. He contacted Chaney, a media broker from Massachusetts, and asked him to submit a proposal to purchase the station.
In early 1985, Chaney contacted either Monroe or Huckaby. Chaney could not recall whether his initial contact was with Monroe or Huckaby. The evidence indicates that he dealt with both of them early in the negotiations.
After several letters and phone conversations with Huckaby in the last half of 1985, Chaney made an offer to buy the assets of the corporation for $1.3 million. The offer was made in a "letter of intent" or "offer to purchase" dated December 26, 1985, and was sent to all four shareholders.
On January 9, 1986, Monroe, Huckaby and Cotton signed the letter of intent (offer to purchase). Cotton drafted an asset purchase agreement (D-7) which he sent to Chaney the next day. This agreement provided that the closing date for the transaction was to be April 1, 1986. Along with this draft, he sent a cover letter to Chaney emphasizing that he was signing only if the deal could be closed on April 1, 1986. He also sent a copy of LSA-R.S. 12:131.[1] Although Chaney admits receiving Cotton's draft of an asset purchase agreement, he denies receiving the cover letter in which Cotton stated that the April 1st closing date was a term of the agreement.[2]
Sometime after the signing of the letter of intent, Cotton called a meeting of the shareholders to discuss the proposed sale to Foy. The meeting was held on April 9, 1986. The minutes of that meeting (D-4) reflect that while all four of the shareholders were present at the beginning of the meeting, Huckaby left the meeting shortly after it began. The three remaining shareholders voted not to sell the assets of the corporation to Foy. Cotton testified that he sent Chaney notice of the results of this meeting, but Chaney denied receiving it.
On April 10, 1986, Chaney sent a revised purchase and sale agreement (P-16) to all four directors. Huckaby signed as chairman of the board and sent the signature page back to Chaney. Despite the fact that he had just recently voted against the sale, Monroe signed the asset purchase agreement in his capacity as secretary and returned it to Chaney.
Chaney continued to try to get Cotton to sign the asset purchase agreement. On July 25, 1986, Cotton again informed the plaintiffs in a mailgram that he opposed a sale of the assets (P-18).
*920 Foy and Chaney then filed this suit for specific performance of the asset purchase agreement and for damages in the amount of $750,000 for the defendants' failure to sell. The defendants answered and filed a reconventional demand for $3 million for damages which allegedly resulted from the institution of this lawsuit. Huckaby was dismissed without prejudice shortly before trial. At trial, he was a witness for the plaintiffs.
The trial court denied the claim of the plaintiffs and the reconventional demand of the defendants. The trial court held that the corporation was not bound by the actions of Huckaby, Monroe and Cotton in signing the written letter of intent (P-8). Because that contract was for the assets rather than the stock of the corporation, the law provides that there must be a meeting of the shareholders for the purpose of considering the proposed action (LSA-R.S. 12:121) or all of the shareholders must have consented in writing to the corporate action (LSA-R.S. 12:76). The trial court found that there was no meeting to consider the contract prior to the signing of the agreement by three of the shareholders. Also, when a meeting was called in April, 1986, the shareholders presentMonroe, Cotton and Godfreyvoted against the sale.
The court also found that neither Huckaby nor Monroe had authority to sign for the corporation and that the shareholders had in fact already voted to reject the sale. As a result, the corporation was not bound by the actions of Huckaby and Monroe in signing the asset purchase agreement.
Only the plaintiffs have appealed.

EFFECT OF THE LETTER OF INTENT
The plaintiffs argue that the trial court erred in failing to hold that the letter of intent was a valid contract with the individual defendants who signed it. We find this argument without merit. LSA-R.S. 12:121 makes it clear that the voluntary transfer of corporate assets can be authorized only by the corporation through its shareholders.
The action of the three shareholders who signed the letter of intent did not constitute corporate action. As the trial court found, the transaction involved in this case was the transfer of the assets of the corporation, not the stock. LSA-R.S. 12:121 provides that a voluntary disposition of all the assets of a solvent corporation may be authorized only by a vote of two-thirds of the voting power present or by the proportion, not less than a majority, authorized by the articles of incorporation. This vote must be at a meeting noticed for this purpose. A meeting to consider corporate action which requires an affirmative vote of the shareholders, like a sale of the assets, is not necessary if there is consent in writing to such corporate action signed by all the shareholders having voting power on the particular question. LSA-R.S. 12:76. This article also provides that written consent by fewer than all the shareholders is sufficient if the articles contain a provision to that effect.
The articles of Benton Broadcasting Corporation do not contain a provision allowing fewer than all of the shareholders, in the absence of a meeting, to consent in writing to the corporate action. Thus, all of the shareholders would have had to consent in writing to the offer or a special meeting to consider the offer would have been necessary to render valid authorization by the shareholders for the sale of the corporate assets.
There is no error in the trial court's finding that there was no meeting of the shareholders called for the purpose of considering the letter of intent prior to the signing on January 9, 1986 by Cotton, Huckaby and Monroe. While Huckaby testified that he discussed Foy's offer with Cotton and Monroe before the letter of intent arrived, the overwhelming evidence is to the effect that there was no meeting. Cotton, Monroe and Godfrey testified that there was no meeting prior to the signing of the letter of intent. They also confirmed that there was only one meeting regarding the sale of the assets and that was in April, 1986, several months after the signing of the letter of intent.
*921 A corporation is not bound by an agreement of its shareholders unless the agreement is made in the form prescribed by law or by the articles of incorporation. Renauld v. Marine Specialty & Mill Supply Company, 172 La. 835, 135 So. 374 (1931). Because neither LSA-R.S. 12:76 nor LSA-R.S. 12:121 was followed, the action taken by the three shareholders did not constitute action taken by Benton Broadcasting Corporation, and does not entitle the plaintiff to the assets of that corporation.

PIERCING THE CORPORATE VEIL
The plaintiffs argue that the corporate veil should be pierced because of the failure of the shareholders to substantially comply with the legal requirements of a corporate entity.
In Cahn Electric Appliance Company v. Harper, 430 So.2d 143 (La.App. 2d Cir. 1983), this court set forth the general principles governing the piercing of the corporate veil:
It is a well established legal principle that a corporation is a distinct legal entity, separate from the individuals who comprise it. La.C.C. Arts. 435; 437; La. R.S. 12:93. The law specifically authorizes the establishment of a corporation by a sole stockholder and individuals are specifically authorized to assume only limited liability by setting up a minimally capitalized corporation. Abraham v. Lake Forest, Inc., 377 So.2d 465 (La.App. 4th Cir.1979). However, in a few limited situations, a litigant can reach an individual shareholder by "piercing the corporate veil," thereby rendering the individual liable for the debts incurred by the corporation. Liberto v. Villard, 386 So. 2d 930 (La.App. 3rd Cir.1980). The doctrine may be imposed even in the absence of fraud where there has been a disregard of the corporate entity to such an extent that the corporation is indistinguishable from the shareholders. Smith Hearron v. Frazier, Inc., 352 So.2d 263 (La.App. 2d Cir.1977). However, when fraud or deceit is absent, other circumstances must be so strong as to clearly indicate that the corporation and shareholder operated as one. Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., 339 So.2d 1280 (La.App. 1st Cir.1976.) Thus, it is clear that in Louisiana the concept of the corporation is felt to be beneficial and is disregarded only in exceptional circumstances. Liberto v. Villard, supra; Kingsman Enterprises v. Bakerfield Electric Co., supra.
Cahn Electric Appliance Company, supra at 144-145.
In deciding whether to pierce the corporate veil, the totality of the circumstances must be examined. Harris v. Best of America Inc., 466 So.2d 1309 (La.App. 1st Cir.1985), writ denied, 470 So.2d 121 (La. 1985). This determination is primarily a factual finding for the trial court to make. Smith-Hearron v. Frazier, Inc., 352 So.2d 263 (La.App. 2d Cir.1977), writ denied, 353 So.2d 1337 (La.1978); George A. Hormel & Company v. Ford, 486 So.2d 927 (La.App. 1st Cir.1986). Circumstances which justify the imposition of the doctrine include: (1) commingling of the corporate and shareholder funds; (2) failure to follow statutory formalities required for a corporation and for the transaction of corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder or director meetings. Smith-Hearron v. Frazier, Inc., supra; Harris v. Best of America Inc., supra.
Since the plaintiffs do not assert that the individual shareholders committed fraud, they have a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to be distinguishable from themselves. American Bank of Welch v. Smith Aviation, Inc., 433 So.2d 750 (La.App. 3rd Cir.1983).
The plaintiffs presented evidence that when three of the shareholders wanted to discuss business, they would often informally meet without sending out notice of a meeting, that minutes were not usually kept, and that resolutions were reduced to writing only when they were required by financial institutions.
*922 These circumstances, even if proven, are insufficient to clearly indicate that the shareholders and the corporation were acting as one. These circumstances are simply not so exceptional as to justify piercing the corporate veil. West Building Materials, Inc. v. Daley, 476 So.2d 554 (La.App. 3rd Cir.1985).

APPARENT AUTHORITY
The plaintiffs argue that Huckaby and Monroe had apparent authority to contract for the defendant corporation for the sale of the assets when they executed the asset purchase agreement (P-16). The only comment the trial court made regarding Huckaby's and Monroe's authority was the statement that "[i]t is apparent that Mr. Huckaby and Mr. Monroe had no authority to sign P-16 for the corporation; the shareholders had already voted to reject the sale."
Apparent authority was fully discussed by this court in McCarty v. Panzico, 467 So.2d 1229 (La.App. 2d Cir.1985):
The doctrine of apparent authority was created to protect parties dealing in good faith with corporate officials when the corporation has taken such action or inaction so as to justify a belief that the official has acted with authority. See Lilliedahl & Mitchel v. Avoyelles Trust and Sav., 352 So.2d 781 (La.App. 3rd Cir.1977). The two requirements for imposition of the doctrine are that the principal must make some form of manifestation to an innocent third party and the third party must reasonably rely on the agent's purported authority as a result of the principal's manifestations.
McCarty, supra at 1234.
We find that the plaintiffs have failed to prove these requirements. Chaney received Monroe's and Huckaby's signed asset purchase agreements after the April 9th meeting in which three shareholders voted to reject Foy's offer. Cotton testified that in mid-April he informed Chaney in writing that the shareholders had voted not to sell the assets. Cotton identified D-5, an undated letter, as the letter which he sent to Chaney. He conceded that he did not send Chaney a copy of the rejection resolution. Chaney, on the other hand, contends that he did not know of the results of the April 9th meeting in which the shareholders voted not to sell.
If Chaney received notice of this meeting, then he knew that Huckaby and Monroe had no authority to execute the asset purchase agreement. Even if he did not receive notice of the meeting, it was still not reasonable for him to believe that Huckaby and Monroe had authority to act for the corporation. It is clear from the record that Chaney knew that a corporate resolution was needed to empower someone to act for the corporation. He admitted that he knew that Huckaby could act for the corporation only if a resolution to that effect had been passed. In addition, Chaney testified that he asked for a copy of such a resolution as a "condition precedent" to closing. In fact, the revised asset purchase agreement he sent to the four shareholders contained a provision calling for the production of the resolution as a "condition precedent" to closing.[3] He conceded that there could not have been a closing if a certificate attesting to the fact that the necessary resolutions had been passed was not forthcoming. He also conceded that he never received such a resolution.
Furthermore, under Louisiana law, a vote of two-thirds of the shareholders present at a meeting specifically called for such purpose is necessary to sell the assets of the corporation, unless all of the shareholders have consented in writing to the sale. LSA-R.S. 12:76, 12:121 and 12:131.

PERSONAL LIABILITY
The plaintiffs argue that they are entitled to a judgment for damages against Monroe for exceeding his corporate authority when he executed the asset purchase *923 agreement (P-16) as secretary for the corporation. We reject this contention. The plaintiffs knew that Louisiana law required a meeting of the shareholders for the approval of an asset sale and that there was no meeting for the execution of the asset purchase agreement. They knew that Monroe had no authority to execute the agreement and thus should not have relied on Monroe's signature.
Under these circumstances, we cannot find that personal liability attaches to the defendant Monroe. See H.B. "Buster" Hughes, Inc. v. Bernard, 318 So.2d 9 (La. 1975); Donnelly v. Handy, 415 So.2d 478 (La.App. 1st Cir.1982). But see Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985), criticized in Morris, Developments in the Law 1985-1986Business Associations, 47 La.L.Rev. 235 (1986); Scariano Brothers, Inc. v. Hammond Construction, Division of Scheyd-Brennan, Inc., 428 So.2d 564 (La.App. 4th Cir. 1983).
For the reasons aforesaid, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 12:131 deals with the rights of a shareholder who dissents from the sale, lease or exchange of corporate assets or from a merger.
[2] Cotton maintains that he told Chaney that the April 1 closing date was a requirement, while Chaney states that he told Cotton that that date was unrealistic.
[3] Chaney explained that although he had not received a copy of the resolution by the time Huckaby and Monroe signed the asset purchase agreement, he did not conclude that the corporate resolution had not been passed. As the resolution was not required until closing, there was still time to get the corporate resolution.