I2CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages by a creditor against the shareholders, officers, and directors of three corporations.

BACKGROUND

On July 17, 1984, Ecole Enterprises, Inc. (Ecole) was incorporated by Thomas G. Ferguson and Ronald J. Doueet. Ferguson served as Eeole’s president, and Doueet was the corporation’s secretary/treasurer. Thereafter, Ecole changed its name to Pan-Oceans, Inc. (POI). On July 17,1984, Ferguson and Doueet also incorporated Pan-Oceans Marine, Inc. (POM). Ferguson served as the president of POM, and Doueet served as the corporation’s secretary/treasurer. On April 17, 1989, Doueet incorporated Project Logistics & Transportation, Inc. (PLT). In this corporation, Doueet held the office of president. The other officers included Charles Drury, vice-president; George Mandeville, secretary; and Ferguson, treasurer. At all pertinent times, Dou-cet and Ferguson were the shareholders in POI and POM, and the shareholders of PLT were Doueet, Mandeville, Ferguson, and Drury.
All three corporations, POI, POM, and PLT, were engaged in domestic and international marine transportation. POI, however, was a licensee of the Interstate Commerce Commission (ICC), which permitted it to perform shipping for the United States government.
Plaintiff, McDonough Marine Service, a Division of Marmac Corporation (McDon-ough), is in the business of chartering barges to contractors engaged in the business of domestic and international marine transportation. For several years prior to 1990, Mo- *307 Donough was chartering barges to POM on a cash basis. In early 1990, McDonough began dealing with POI, POM, and PLT on a credit basis. Thereafter, these corporations became delinquent in their payments to Mc-Donough and experienced other cash flow and credit problems. POM was $313,095.00 in arrears on its obligations to McDonough, and PLT owed McDonough $206,690.00. The corporations also abandoned barges and tugboats owned by McDonough in foreign ports, which required McDonough to fund the expenses of returning the marine | .«¡equipment to the United States. As a result, McDonough was owed $220,936.77 for expenses incurred as a result of the breach of charter agreements by POM and PLT.
Between 1988 and 1991, POI, POM, and PLT filed petitions for bankruptcy. In December, 1988, POI filed a voluntary petition for reorganization under Chapter 11 in the U.S. Bankruptcy Court, Eastern District of Louisiana, under .docket number 88-04960.[2] On June 10, 1991, POM filed a voluntary petition for liquidation under Chapter 7 in the U.S. Bankruptcy Court, Eastern District of Louisiana, under docket number 91-12356. On that same day, PLT filed a voluntary petition for liquidation under Chapter 7 in the U.S. Bankruptcy Court, Eastern District of Louisiana, under docket number 91-12355.[3]

FACTS

On January 13,1992, McDonough filed the instant action for damages against Doucet, Mandeville, and Ferguson (the officers, directors, and shareholders of POI, POM, and PLT). McDonough alleged that the defendants misrepresented the financial condition of the companies to induce McDonough to continue to charter barges after the companies were in financial distress. McDonough further alleged that the defendants knew or acquiesced in chartering barges to fulfill one-way transportation contracts without sufficient revenue to cover the cost of the return voyage, intentionally underbid jobs, and engaged in other unorthodox business practices. In an amended petition, McDonough sought to pierce the corporate veil of the corporations and to hold the shareholders of these corporations liable for all debts owed to McDonough on the following grounds:
(1) Failing to maintain corporate formalities required by Louisiana law;
(2) Commingling funds and assets of PLT, POM, and POI;
(3) Invading the funds and assets of the corporations;
14(4) Undercapitalizing the corporations; and
(5) Using the corporations to perpetrate fraud and other wrongs.
On December 18, 1992, Ferguson filed a third party claim against Drury, alleging indemnity and contribution.[4]
On July 8 and 9, 1993, and April 14, 1994, trial on the merits was held. On June 23, 1995, the trial court rendered judgment, setting forth lengthy “Reasons for Judgment.” The trial court concluded that McDonough failed to produce sufficient evidence to justify piercing the corporate veil and failed to prove that any unlawful distributions had been made to any of the defendants. Accordingly, McDonough’s claims against defendants were dismissed with prejudice.
From this adverse judgment, McDonough appeals, assigning the following specifications of error:
(1) The trial court erred by finding that the corporate veils of Pan Oceans, Inc., Pan Oceans Marine, Inc., and Project Logistics & Transportation, Inc. should not be pierced to hold their shareholders liable *308 for debts owed to McDonough Marine Service.
(2) The trial court erred in finding that a necessary element in an action for breach of fiduciary duty against an office[r] of an insolvent corporation requires a showing that the officer diverted funds to himself.
(3) Assuming the trial court was not in error with respect to Assignment of Error Number 2, the trial court erred by not finding that Doucet, Mandeville and Ferguson had diverted funds from the insolvent corporations to themselves.

PIERCING THE CORPORATE VEIL

The statutes and jurisprudence are clear that shareholders of corporations are not responsible for the debts of the corporation. Jones v. Briley, 593 So.2d 391, 394 (La.App. 1st Cir.1991). As a general rule, corporations are distinct legal entities, separate from the individuals who comprise them, and individual shareholders are not liable for the debts of the corporation. LSA-R.S. 12:93 B; Riggins v. Dixie Shoring Company, Inc., 590 So.2d 1164, 1167 (La.1991); Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 756 (La.1983); Dutton & Vaughan, Inc. v. Spurney, 600 So.2d 693, 697 (La.App. 4th Cir.), writ denied, 601 So.2d 663 (La.1992). What is due to a corporation is not due to any of the individuals who compose it, or vice versa, and a creditor of a corporation cannot compel any of its members to pay what may be due him by the corporation. Glazer v. Commission on Ethics for Public Employees, 431 So.2d at 756-757; Jones v. Briley, 593 So.2d at 394. See also LSA-C.C. art. 24, comment (d), (the patrimony of a juridical person is distinct and distinguishable from the patrimony of its members).
The economic purpose underlying this framework of limited liability is that protection from individual liability encourages and promotes business and industry. Riggins v. Dixie Shoring Company, Inc., 590 So.2d at 1167. Additionally, this shareholder liability shield encourages business investments in high-risk areas by enabling investors to utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business. Smith v. Cotton’s Fleet Service, Inc., 500 So.2d 759, 762 (La.1987). Although the principle of limited liability for shareholders is widely accepted, on occasion, the courts will nevertheless disregard the corporate entity and pierce the corporate veil, holding shareholders personally liable for the corporation’s debts. Jones v. Briley, 593 So.2d at 394. However, because of the beneficial role of this shield, only in exceptional circumstances is the shareholder’s limited liability disregarded. Bergman v. Nicholson Management and Consultants, Inc., 594 So.2d 491, 499 (La.App. 4th Cir.), writ denied, 600 So.2d 646 (La.1992).
There are exceptions to the rule of non-liability of shareholders for the debts of a corporation whereby the court may ignore the corporate fiction and hold the individual hable. Harris v. Best of America Inc., 466 So.2d 1309, 1314 (La.App. 1st Cir.), writ denied, 470 So.2d 121 (La.1985). Louisiana courts have allowed the piercing of the corporate veil under only two exceptional circumstances, namely where the shareholders acting through the corporation commit fraud or deceit on a third party and where the shareholders have failed to conduct the business on a corporate footing, disregarding the corporate entity to such extent that they and it become indistinguishable. Jones v. Briley, 593 So.2d at 394.
| fiWhere fraud or deceit has been practiced on a third party by the shareholder acting through the corporation, the courts have disregarded the corporate entity and imposed personal liability for those debts upon the shareholder. LSA-R.S. 12:95; Riggins v. Dixie Shoring Company, Inc., 590 So.2d at 1168; Dutton & Vaughan, Inc. v. Spurney, 600 So.2d at 697; Dutton & Vaughn, Inc. v. Spurney, 496 So.2d 1126, 1129-30 (La.App. 4th Cir.1986), writ denied, 501 So.2d 208 (La.1987). Fraud exists if it can be shown that material misrepresentations have been made by one party designed to- deceive another to obtain some unjust advantage or to cause loss or inconvenience to the other. LSA-C.C. art. 1953; McPhail v. Louisiana Farm Bureau Rice, Inc., 419 So.2d 977, 979 (La.App. 3rd Cir.), writ de *309 nied, 421 So.2d 908 (La.1982); Altex Ready-Mixed Concrete Corp. v. Employers Commercial Union Insurance Company, 308 So.2d 889, 892 (La.App. 1st Cir.), writ denied, 312 So.2d 872 (La.1975). In other words, intent to defraud and loss or damage are two essential elements to constitute legal fraud. McPhail v. Louisiana Farm Bureau Rice, Inc., 419 So.2d at 979. Moreover, fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. LSA-C.C. art. 1957. See McPhail v. Louisiana Farm Bureau Rice, Inc., 419 So.2d at 978-79; Altex Ready-Mixed Concrete Corp. v. Employers Commercial Union Insurance Company, 308 So.2d at 892.
In the second situation, the corporation is referred to as the “instrumentality” or “alter ego” of the members. The corporate veil may be pierced, even in the absence of fraud, where there has been a disregard of the corporate entity to such an extent that the corporation is indistinguishable from the shareholders. Riggins v. Dixie Shoring Company, Inc., 590 So.2d at 1168; McLean v. Smith, 593 So.2d 422, 426 (La.App. 1st Cir.1991); Chaney v. Godfrey, 535 So.2d 918, 921 (La.App. 2nd Cir.1988); Harris v. Best of America Inc., 466 So.2d at 1315. In other words, when the members fail to conduct a corporation on a separate footing, the court may ignore the corporate entity and hold individual members liable to third parties. Riggins v. Dixie Shoring Company, Inc., 590 So.2d at 1168; Harris v. Best of America Inc., 466 So.2d at 1315. In such situations, a litigant can reach an individual shareholder by “piercing the corporate veil,” thereby rendering the individual liable for the debts incurred by the corporation. McLean v. Smith, 593 So.2d at 426; Chaney v. Godfrey, 535 So.2d at 921; Harris v. Best of America Inc., 466 So.2d at 1314.
Louisiana courts have listed the following circumstances which, when viewed as part of the total circumstances in each individual case, justify the imposition of the alter ego doctrine:
1)commingling of corporate and shareholder funds,
2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs,
3) undercapitalization,
4) failure to provide separate bank accounts and bookkeeping records, and
5) failure to hold regular shareholder or director meetings.
Riggins v. Dixie Shoring Co., Inc., 590 So.2d at 1168; Pine Tree Associates v. Doctors’ Associates, Inc., 94-1193 (La.App. 1st Cir. 4/7/95); 654 So.2d 735, 738-39, writ denied, 95-1608 (La. 10/6/95); 661 So.2d 467; McLean v. Smith, 593 So.2d at 426; Jones v. Briley, 593 So.2d at 395; Chaney v. Godfrey, 535 So.2d at 921; Harris v. Best of America Inc., 466 So.2d at 1315.
In applying the principle of corporate immunity, the shareholders or members have the initial burden of showing the corporate existence, and defendants carry this burden by use of the corporate charter and other documents. The burden then shifts to the plaintiff to show the exceptional circumstances which must exist in order for the corporate veil to be pierced and individual shareholders or members held liable for a corporate debt. Jones v. Briley, 593 So.2d at 394.
The determination of whether the shareholders have failed to conduct the corporation’s business on a corporate footing is to be based on a totality of the circumstances. Riggins v. Dixie Shoring Company, Inc., 590 So.2d at 1169; McLean v. Smith, 593 So.2d at 426; Jones v. Briley, 593 So.2d at 394; Chaney v. Godfrey, 535 So.2d at 921; Harris v. Best of America Inc., 466 So.2d at 1315. In the absence of fraud or deceit, other circumstances must be so strong as to clearly indicate | sthat the corporation and shareholder(s) operated as one. Chaney v. Godfrey, 535 So.2d at 921; Harris v. Best of America Inc., 466 So.2d at 1315. Because Louisiana considers the concept of the corporation beneficial, the principle that the corporation is a separate entity should be disregarded only in exceptional circumstances. Harris v. Best of America Inc., 466 So.2d at 1315. Whether individual liability will be assigned to shareholders is primarily a factual finding to be made by the trial court. Withers v. Timber *310 Products, Inc., 574 So.2d 1291, 1295 (La.App. 3rd Cir.), writ denied, 580 So.2d 378 (La. 1991); Byles Welding and Tractor Company, Inc. v. Butts Sales and Service, Inc., 541 So.2d 992, 994 (La.App. 3rd Cir.), writ denied, 546 So.2d 1224 (La.1989); George A. Hormel & Company v. Ford, 486 So.2d 927, 928 (La.App. 1st Cir.1986).
In Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993), the Louisiana Supreme Court enunciated a two-part test for the reversal of a factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportar tion and Development, 617 So.2d at 882. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
In the instant case, the defendants, Ferguson, Doucet, and Mandeville established corporate existence of POI, POM, and PLT by showing that all three corporations were formally incorporated. The corporate charters and other documents demonstrated the existence of these corporations. The burden then shifted to LMcD onough to show the exceptional circumstances which must exist in order for the corporate veil to be pierced and individual shareholders or members to be held liable for a corporate debt.
On appeal, McDonough contends that the trial court erred in failing to find that it established that the shareholders diverted funds from the corporation and that the other circumstances justified piercing the corporate veil and imposing personal liability on the individual shareholders.
1. Alter Ego of Shareholders.
In support of its contention that the shareholders are personally liable for the debts of POI, POM, and PLT, McDonough contends that the trial court erred in failing to pierce the corporate veil.
In refusing to pierce the corporate veil, the trial court painstakingly reviewed all of the evidence in his written reasons for judgment.
In discussing adherence with corporate formalities, the trial court noted that small, closely-held corporations are not required to comply with all of the corporate formalities as rigidly as larger corporations. The trial court determined that the corporations complied with all of the essential corporate formalities, had separate bank accounts, filed separate income tax returns, conducted informal board meetings, and contracted and conducted business in the name of the corporation such that the representatives of Mc-Donough knew they were dealing with corporate entities.
In discussing the pervasive commingling of funds among the corporations and from the corporations to the individual shareholders, the trial court noted that the corporations were not named as defendants and that the transfer of assets from one corporation to another does not of itself demonstrate that the shareholder disregarded the corporate entity or treated the corporation as an alter ego. Rather, the evidence demonstrated that the corporations performed different functions to permit the corporation with the ICC permit to remain viable so that the colorations could obtain government work. Moreover, the trial court also examined the evidence relative to the preferential payment to shareholders and to the use of corporate funds for personal expenses. The trial court determined that no preferential payments were made to | mshareholders. The trial court also determined that the corporate funds utilized for personal expenses were accounted for in the corporate books, that one personal expense which had not been accounted for was inconsequential in comparison to the corporation’s total expenditures, *311 and that the other payments were for legitimate corporate debts regardless of any personal guarantee by the individual shareholders.
In discussing the intentional undercapitali-zation of the corporations, the trial court determined that McDonough had experience dealing with the corporations for almost six (6) years between 1984 and 1991. Moreover, the corporate entities had not been created to defraud their creditors, but had been organized many years prior to the business activities giving rise to the instant lawsuit.
After examining all of the evidence concerning the issue of the corporate entities as alter egos of the shareholders, the trial court determined that, based on the totality of the circumstances, the shareholders did not fail to conduct the corporation’s business on a corporate footing. Although McDonough contends in its appellate brief that it does not seek a reversal of the trial court’s factual findings, as noted earlier, whether individual liability will be assigned to shareholders is primarily a factual finding.
After reviewing the entire record in the instant case, we cannot say that the evidence so strongly indicates that the corporations and the shareholders acted as one. As such, we conclude that there is a reasonable basis in the record for the trial court’s finding that the corporate veils of POI, POM, and PLT should not be pierced to hold the individual shareholders liable for debts owed to McDon-ough. Accordingly, the trial court’s finding cannot be manifestly erroneous or clearly wrong.
2. Fraud and Misrepresentation.
In support of its position that the shareholders are personally liable for the debts of POI, POM, and PLT, McDonough contends that the trial court erred in failing to find that Doucet, Mandeville, and Ferguson diverted funds from the insolvent corporations to themselves.
In refusing to hold the individual shareholders liable for any alleged acts of fraud or misrepresentation, as noted earlier, the trial court determined that no preferential payments were made to shareholders. Although Ferguson was given a check for |n$100,000.00 on the eve of the bankruptcy of one of the corporations, the evidence is clear that he never cashed the check. On the contrary, the evidence is clear that Ferguson returned the check to the corporation and that it was redeposited to the corporations’ accounts. Moreover, the court noted that, although Doucet admittedly misrepresented the corporations’ pending jobs to McDonough, these misrepresentations were made after McDon-ough had already agreed to lease the barge to PLT and after the barge was already in route to a foreign port. The trial court also noted that McDonough was aware of the corporations’ mounting financial problems because of the overdue accounts and returned checks. Further, McDonough had on a previous occasion required the corporations to make a substantial payment toward the accounts prior to agreeing to extend further credit.
After examining all of the evidence concerning fraud or misrepresentation, the trial court determined that the evidence did not support a finding that the shareholders intended to defraud McDonough. In fact, the trial court noted that the evidence established that the shareholders were concerned about the mounting debts, but were determined to work harder to meet their financial obligations.
After reviewing the entire record in the instant case, we find that there is a reasonable basis in the record for the trial court’s finding that the shareholders were not guilty of fraud or misrepresentation sufficient to pierce the corporate veils of POI, POM, and PLT such that the individual shareholders should be liable for debts owed to McDon-ough. Accordingly, the trial court’s finding cannot be manifestly erroneous or clearly wrong.
McDonough’s first and third assignment of error are without merit.

BREACH OF FIDUCIARY DUTY

As a separate basis of liability, McDonough contends that defendants, as officers of POI, POM, and PLT, owed it a fiduciary duty.
*312 Corporate officers and directors owe a fiduciary duty to their corporation and its shareholders. LSA-R.S. 12:226; LSA-R.S. 12:91. They do not, however, owe such a duty to persons or entities which contract with the corporation. Dutton & Vaughan, Inc. v. Spurney, 600 So.2d at 697; Korson v. Independence Mall I Ltd., 695 So.2d 1174 1178 (La.App. 5th Cir.1992). See Tahoe Corporation v. P & G Gathering Systems, Inc., 506 So.2d 1336, 1344-45 (La.App. 2nd Cir.1987).
Clearly, Doucet, Ferguson, and Mandeville did not owe a fiduciary duty to McDonough. Accordingly, the second assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Appeal costs are assessed against McDonough.
AFFIRMED.

. Sometime thereafter, POI’s bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation.

. In its appellate brief, McDonough alleges that Doucet filed for personal bankruptcy on October 1, 1993. In his trial testimony, Doucet acknowledged that he filed for personal bankruptcy. The record, however, is devoid of any order by the bankruptcy court, staying the instant litigation as it concerns Doucet. McDonough further alleges in its appellate brief that the bankruptcy court denied Doucet’s discharge on the basis of fraud; however there is nothing in the record to support this allegation.

.Pursuant to a joint motion and order of voluntary dismissal, Ferguson’s third party demand was dismissed on April 20, 1994.