574 So.2d 1291 (1991)
James D. WITHERS, Plaintiff-Appellee,
v.
TIMBER PRODUCTS, INC., Defendant,
John Makar, Defendant-Appellant.
No. 89-840.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
Rehearing Denied March 8, 1991.
*1292 R. Stuart Wright, Natchitoches, for plaintiff/appellee.
John Makar, Natchitoches, for defendant/ appellant.
Before GUIDRY, STOKER and DOUCET, JJ.
GUIDRY, Judge.
Defendant, John Makar, suspensively appeals a judgment of the district court finding plaintiff, James D. Withers, totally and permanently disabled and casting him for *1293 $262.00 per week in worker's compensation benefits from May 21, 1986 plus penalties, attorney's fees and all related medical expenses. We amend and affirm as amended.
Plaintiff, James D. Withers, a truck driver, was injured May 21, 1986, as he attempted to dismount from a front end loader at the Timber Products, Inc. saw mill near Provencal, Louisiana. According to Withers, as he was dismounting from the front end loader, his pants leg snagged on a brake lever, causing him to fall, injuring his back. The accident allegedly took place at approximately 1:30 a.m. with no witnesses present. The record reflects that Withers finished his deliveries early that same morning, but has not worked since. Plaintiff testified that he notified Larry Davis, the mill superintendent, of his accident just before the mill opened on the morning of May 21, 1986. Davis, on the other hand, maintained that he learned of the alleged injury from plaintiff's brother when Withers was hospitalized.
Following Timber Products' rejection of a worker's compensation recommendation from the State Department of Labor, suit was timely filed against that corporation. By supplemental and amending petition, John Makar, appellant, was added as a defendant. In his supplemental and amending petition, plaintiff alleged that Timber Products was the alter ego of Makar and prayed for judgment against Makar. Makar filed an exception of prescription, which is reurged on appeal, based upon plaintiff's amending petition being filed more than one year after the date of plaintiff's accident. The trial court overruled Makar's exception of prescription and, as aforestated, rendered judgment in favor of plaintiff.
On appeal, in addition to reurging his exception of prescription, Makar raises four other issues: (1) plaintiff was an independent contractor and thus is not entitled to worker's compensation benefits; (2) the trial court erred in finding plaintiff entitled to compensation without corroborating proof of plaintiff's injury and continued inability to work; (3) the trial court erred in finding appellant to be the alter ego of Timber Products and in piercing the corporate veil; and, (4) the award of penalties and attorney's fees was improper.

INDEPENDENT CONTRACTOR ISSUE
Appellant argues that plaintiff, a trucker engaged by Timber Products to haul chips, was an independent contractor and thus Timber Products and John Makar are not liable to him for the payment of worker's compensation benefits.
Withers hauled wood chips from the Timber Products mill to a purchaser designated by Timber Products. The record reflects that Timber Products had the right to control and supervise the hauling and exercised the right to direct when and to whom the wood chips were to be hauled. While plaintiff supplied and paid the expenses of the truck used, the price per ton paid to him took into account the mileage involved in making delivery. Plaintiff was required to load his own truck but always used a front end loader supplied by Timber Products.
We find the facts in this case strikingly similar to those in Middleton v. H.M. Stevens Lumber Co., 46 So.2d 508 (La.App. 1st Cir.1950):
"Plaintiff was engaged by Stevens Lumber Company to haul lumber from its mill for so much per thousand for a long haul, and a lesser amount per thousand for a short haul, and was also furnished labor at the lumber company's expense to assist in the loading of heavy lumber and the loading of lumber into railroad cars when it was to be shipped. The plaintiff was to furnish his truck, pay for his own gas, oil and other expenses incidental to the hauling. As the lumber company decided that the plaintiff's truck could not keep up with the hauling of the lumber, it engaged Reese & Lambert who received the same remuneration and hauled under the same terms as the plaintiff ...
It may be fairly concluded from the testimony in this case that the Stevens Lumber Company pointed out the kind and character of the lumber to be hauled *1294 and directed the place of delivery and the person to whom the lumber was to be delivered or whether it was to be loaded in railroad cars, and it clearly had the right to fire or terminate the employment of the plaintiff or Reese and Lambert at any time. The Stevens Lumber Company had the right to control and supervise the hauling and the absolute right to say when and what lumber should be hauled.
Under the facts in this case, the plaintiff was an employee of the lumber company and not an independent contractor. See Litton v. Natchitoches Oil Co., La. App., 195 So. 638, and cases therein cited."
See also Young v. Royal Jones and Associates, 521 So.2d 798 (La.App. 2d Cir.1988). The record in this case reveals no clear error in the trial court's conclusion that Withers was an employee of Timber Products and not an independent contractor.

PROOF OF PLAINTIFF'S INJURY AND HIS CONTINUING DISABILITY
Plaintiff was injured on May 21, 1986. He first consulted Dr. John P. Sandifer, an orthopaedic surgeon, the next day. Dr. Sandifer found muscle spasms in plaintiff's back and, because of complaints of accompanying leg pain, suspected a herniated disc. X-rays supported the doctor's suspicions. Plaintiff's symptoms worsened and Dr. Sandifer hospitalized Withers for five to six days beginning May 27, 1986. During that period of time, plaintiff showed some improvement and Dr. Sandifer discharged him to continue conservative treatment. However, plaintiff failed to respond. Dr. Sandifer wanted to perform a myelogram and a CAT scan but plaintiff refused these procedures as he was unable to pay for same and Timber Products disclaimed any responsibility therefor.
At the time of Dr. Sandifer's deposition, June 6, 1988, Withers was still receiving active treatment from him. The doctor stated that Withers' symptoms were compatible with the accident described to him; that Withers currently suffers from a herniated disc; and, that he is presently unable to engage in his former occupation without substantial pain. Dr. Sandifer recommended that plaintiff undergo both the myelogram and CAT scans to pinpoint his problems and was of the opinion that surgery could not be ruled out.
It is well settled that the testimony of an injured employee alone can establish the occurrence of a compensable accident by a preponderance of the evidence if his testimony is supported by corroborating circumstances. Estrada v. Domino, 441 So.2d 36 (La.App. 3rd Cir.1983); Crochet v. American Tobacco Company, 407 So.2d 1330 (La.App. 3rd Cir. 1981); and Lewis v. Alloy Casting of La., Inc., 465 So.2d 847 (La.App. 2d Cir. 1985).
"In a workers compensation case, the plaintiff has the burden of proving his claim by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974). A plaintiff may prove his claim by presenting his own uncontradicted testimony that establishes a presumption that he suffered a disability as a result of a work accident. If defendant fails to produce any direct evidence to rebut it, then plaintiff is entitled to compensation. Robertson v. Scanio Produce, 449 So.2d 459 (La.1984)."
Lewis, supra, at 849. In the instant case, Withers' testimony was uncontradicted and unrebutted. His testimony was corroborated by that of his treating physician, who initially saw him on the day following the accident. Accordingly, we find that plaintiff proved his injury, his continuing inability to work and his entitlement to compensation. However, inasmuch as Dr. Sandifer did not rule out plaintiff improving and/or recovering with or without surgery, we find the trial judge's conclusion that plaintiff is permanently and totally disabled to be clearly wrong. From the testimony and evidence presented, we find James D. Withers to be temporarily totally disabled and we will amend the judgment accordingly.

THE ALTER EGO AND PRESCRIPTION ISSUES
Makar contends that the trial court erred in finding Timber Products to be his alter ego and in piercing the corporate veil.
*1295 Makar admitted that he formed Timber Products a few weeks after foreclosing on Mak-Wee and that he was the sole stockholder and officer at the time of incorporation. In his reasons for judgment, the trial judge observed:
"Mr. Makar testified that, shortly after incorporating the business as Timber Products, Inc., he `swapped' one hundred percent (100%) of the stock of Timber Products, Inc. to John J. Johnson, III, of Winnfield, Louisiana, for some property in Winnfield. Mr. Johnson is alleged to be judgment proof and to have no assets and no source of business income. Mr. Makar testified that he swapped all of the stock in Timber Products, Inc. for Mr. Johnson's non-revenue producing property as an `investment.' At the trial of this case, Mr. Makar admitted that there was no Worker's Compensation Insurance in effect covering anyone working for Timber Products, Inc. and testified that the business was not insured because `it was a calculated risk that no one would get hurt. If someone got hurt and the business was doing good, they got paid. If someone got hurt and the business was not doing good, then they got nothing.'
Mr. Johnson, as stated above, lived in Winnfield, some forty-five (45) miles east of the chip mill operated by Timber Products, Inc. Mr. Johnson testified that, although he ostensibly owned one hundred percent of the stock of Timber Products, Inc.; that he had never been to the mill site, had never met or talked to the mill superintendent, did not keep up with the financial operation of the mill; could not say whether or not federal or state income tax returns had been filed or paid; did not know how many employees worked for Timber Products, Inc. and had no idea of who was being paid what. Mr. Johnson candidly admitted that he had served two felony sentences with the Louisiana Department of Corrections and was a two time felony offender. He further testified that he was `judgment proof.'
The Court finds that Timber Products, Inc. was located in the precise site of Mr. Makar's previous corporation known as Mak-Wee; the same equipment was being used; the same superintendent, Larry Davis, was in charge of operations."
It was established that Makar had authority to sign Timber Products checks, but Johnson did not. Further, no evidence of the alleged transfer from Makar to Johnson was made part of the record.
"It is a fundamental legal principle that a corporation is a distinct legal entity, separate from the individuals who comprise it. LSA-C.C. art. 435, 437; LSA-R.S. 12:93(B). In a few limited situations a party can reach an individual shareholder by "piercing the corporate veil", making the individual liable for debts incurred by the corporation. This can be done when a shareholder practices fraud upon a third person through the corporation or disregards the corporate entity to such an extent that the individualities of the corporation and shareholder cease to exist; the corporation no longer exists as an individual distinguishable from the shareholder. When a party seeks to pierce the corporate veil, the situation must be viewed with regard to the totality of the circumstances. Whether individual liability will be assigned to shareholders is primarily a factual finding to be made by the trial court. In Louisiana the concept of the corporation as a separate entity is felt to be beneficial and is disregarded only in exceptional circumstances. Kingsman Enterprises v. Bakerfield Electric Co., 339 So.2d 1280 (La.App. 1st Cir.1976);"
Liberto v. Villard, 386 So.2d 930 (La.App. 3rd Cir. 1980).
After closely examining the record, we cannot say that the trial judge clearly erred in finding Timber Products to be the alter ego of defendant, Makar. Inasmuch as we have reached this conclusion, it follows that timely institution of suit and service of process on Timber Products clearly notified Makar of the instant litigation and interrupted prescription against him, individually. Accordingly, the exception of prescription filed by Makar was properly overruled.

*1296 PENALTIES AND ATTORNEY'S FEES
Finally, we address the issue of penalties and attorney's fees. It is well settled that a worker's compensation claimant is not entitled to penalties and attorney's fees unless the withholding of benefits is found to be arbitrary, capricious or without probable cause. Rusher v. Winningham Nissan-Volvo, Inc., 550 So.2d 784 (La.App. 2d Cir.1989); Guidry v. United Furniture Distributors, Inc., 544 So.2d 100 (La.App. 3rd Cir.1989).
"The trial judge's determination that an award of penalties and attorney's fees is warranted is based on a finding of fact and his decision should not be disturbed unless it is clearly wrong. Savant v. Employers National Insurance Company, 502 So.2d 176 (La.App. 3rd Cir. 1987)."
Valley v. American Insurance Company, 510 So.2d 449 (La.App. 3rd Cir.1987), writ denied, 514 So.2d 130 (La.1987); see also Williams v. Union Tank Car Co. Through Its Lithcote Company Division, 524 So.2d 858 (La.App. 3rd Cir.1988).
In this case, it is undisputed that Timber Products had no worker's compensation coverage. The trial judge found that the alleged "transfer" of Timber Products stock to John Johnson was nothing more than a sham transfer in an attempt by Makar to avoid exposure for worker's compensation liability. This being the case, the trial judge's obvious conclusion, that Timber Products' failure to pay plaintiff worker's compensation was arbitrary and capricious, is not clearly wrong. Penalties and attorney's fees were properly assessed.
Accordingly, for the reasons stated, we amend the judgment of the trial court to find plaintiff, John D. Withers, to be temporarily, totally disabled. In all other respects, we affirm the judgment of the trial court. All costs of this appeal are taxed against defendant-appellant, John Makar.
AFFIRMED AS AMENDED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
That the purely factual findings of the trial court in this case must follow the manifest error rule needs no citation of authority. However, one critical conclusion reached by the trial court, and affirmed by the majority, is of serious concern. This is the conclusion of the trial court that this is a case of "exceptional circumstances" which make it necessary that the corporate veil be pierced so as to hold John Makar personally liable "to give James D. Withers justice and to avoid inequitable results." I would want to render justice to the plaintiff, but I would want to render justice to Mr. Makar as well. However, my concern goes beyond the parties to this case.
The majority holding in this case establishes a rule that if a solely owned corporation incurs worker's compensation liability and has inconsequential assets and no worker's compensation insurance, the shareholder is liable personally. This may represent desirable policy, but the trial court focused only on its interpretation of the motivation for incorporation of Timber Products, Inc. I view the issue in this case as being one beyond the adjusting of rights between Mr. Withers and Mr. Makar. While our law, as well as almost all law, does not permit the use of corporations for abuse, it is also very protective of the integrity of the corporate device because of its social and economic value. See Comment: "Piercing the Corporate Veil in Louisiana Absent Fraud or Deceit," 49 La.L. Rev. 1230 (1988); Comment: "Piercing the Corporate Veil in Louisiana," 22 Loyola L.Rev. 993 (1976); and Kingsman Enterprises v. Bakerfield Elect. Co., 339 So.2d 1280 (La.App. 1st Cir.1976).
In this case the plaintiff knew that Timber Products, Inc. was a corporation. As the record shows, the plaintiff first sued the corporation alone. Not until months later was the petition amended to bring in Makar under the allegation that the corporation should be disregarded and that Makar be held liable as the corporation's alter ego. If Mr. Withers was a person seeking to enforce contract rights, say as a seller of *1297 materials or services to Timber Products, Inc., he would be hard put under the facts of this case to show justification for piercing the corporate veil. Mr. Withers would have to show not only that Makar owned the corporate shares, but that Makar disregarded the corporate entity to such an extent that it ceased to be distinguisable from himself. Mr. Withers would have the burden of proving this. Mills Co. v. Crawfish Capitol Seafood, 569 So.2d 1108 (La. App. 3d Cir. 1990), and Casson v. Hartford Fire Ins. Co., 548 So.2d 66 (La.App. 3d Cir.1989). In this suit for compensation benefits, Mr. Withers' burden of proof should be no less.
In this case the plaintiff seeks to pierce the corporate veil; this issue did not come about because the plaintiff sued Makar who then interposed the existence of the corporation as a defense. Although plaintiff had the burden of proof in this issue, the trial court charged Makar with the burden and called the corporation a sham because Makar failed to present articles of incorporation and other corporate documents or records to prove the genuineness of the corporation.
The jurisprudence suggests that fraud or deceit may justify disregarding corporate existence. I do not think fraud or deceit have been shown in this case. Likewise, I do not think that it was shown, as the trial judge seems to feel, that the sole reason for incorporating Timber Products, Inc. was to avoid compensation liability. If such an avoidance was the sole motive, it would be a perfectly legitimate reason. What may be reprehensible in a case like this is the failure of the corporation to carry worker's compensation insurance. I would not want to suggest that sham corporations may be used to avoid incurring worker's compensation liability. Perhaps the problem needs to be addressed. However, in the case before us, I do not believe the plaintiff has proved more than the fact that he cannot look to the corporation itself for satisfaction of his claim and the corporation carried no worker's compensation insurance. As I see it, these two facts are the only facts on which the trial court's ruling is based. On this point I must observe that I have not found in the record the callous statement attributed to Mr. Makar by the trial judge, shown in quotation marks, which is excerpted in the majority opinion. I assume the trial judge was paraphrasing what he thought Mr. Makar said or was giving his interpretation of what he considered to be Mr. Makar's attitude. Mr. Makar did admit the corporation carried no compensation insurance and asserted that the corporation had no financial standing sufficient to pay worker's compensation.
Insufficient ability to respond to a compensation judgment because of financial inability or lack of insurance coverage may be enough to justify disregarding corporate existence. I am not certain, but I am not ready to subscribe to the proposition. See Cole v. Golemi, 271 So.2d 65 (La.App. 4th Cir. 1972).
In this dissent I have not touched on the question of fact as to whether Makar's sale of his shares of Timber Products, Inc. (prior to the time of plaintiff's accident) to John J. Johnson, III was valid. For me the legal issue discussed above deserves most careful and thoughtful consideration.
For the foregoing reasons I respectfully dissent.