I ^ABORDE, Judge,
concurring.
This court has concluded that a worker by law must be classified as permanently totally disabled, if:
1) the worker presently “is disabled from returning to gainful employment”;
2) his “condition will probably worsen”;
3) there remains significant medical uncertainty whether his “condition will improve enough for him to return to work”; and
4) the hazards of additional trauma are too great to require him to risk future employment.
In reaching its decision, the hearing officer was presented with testimony by a treating neurosurgeon that the claimant is not a good candidate for any type of treatment. Although his treating psychiatrist believed that a “dorsal column stimulator” might benefit the injured worker, we cannot classify as clearly wrong the hearing officer’s conclusion that further rehabilitative efforts would be futile in this employee’s case. Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 and 364 (La.1992). Cf. Huval Baking Co., Inc. v. Fontenot, 629 So.2d 431 (La.App. 3d 1993) (no credible evidence to support permanent total disability; offset denied); Withers v. Timber Products, Inc., 574 So.2d 1291, 1294 (La.App. 3d Cir.), writ denied, 580 So.2d 378 (La.1991) and Brown v. Knost Roofing Co., 566 So.2d 1024, 1027 (La.App. 3d Cir. 1990) (evidence of disability, but not of permanent disability).
The Supreme Court has yet to decree what if any burden of proof the employer must carry to show that it is entitled to an offset under LSA-R.S. 23:1225. See Huval Baking Co., Inc. v. Fontenot, 629 So.2d at 433 n. 3. (It may well be that burden of proof required of workers in LSA-R.S. 23:1221(2) and employers under LSA-R.S. 23:1225 is identical.) Nor has it offered its view as to the likelihood of medical recovery necessary to show (for purposes of LSA-R.S. 23:1225) that one is, legally speaking, permanently rather than temporarily totally disabled. The instant controversy would seem to lay bare these questions for its consideration.
Axiom
Under the circumstances of the present controversy, the finding that the employee is a permanently totally disabled worker will provide the employer a Social Security offset. LSA-R.S. 23:1225, the provision offering such an offset, requires that a worker be permanently totally disabled, not temporarily totally disabled.
Legally (and logically) necessary to its finding the employee permanently totally disabled is the majority’s conclusion that the aforementioned factors are sufficient as a matter of law to preclude the worker from ever being able to engage in any employment or self-employment, including, but not limited to, odd-lot employment, sheltered employment, or employment while working in pain, notwithstanding the location or availability of such employment. LSA-R.S. 23:1221(2) and (2)(a). In the absence of this new corollary, the majority clearly could not have found plaintiff to be permanently totally disabled, since the 1983 revisions to our workers compensation scheme forbid such a conclusion in the absence of proof that the disability is permanent and not simply of indefinite duration. See, e.g., LeDoux v. Robinson, 568 So.2d 244, 247 (La.App. 3d Cir.1990).
*362 laCorollary
This court’s majority has determined that the factors summarized above are sufficient to carry the burden of showing permanent total disability, not only by a preponderance, but by clear and convincing evidence. Because the burden of proof required of injured workers seeking permanent total disability benefits is precisely identical to that which the majority concludes the employer in this case has carried under LSA-R.S. 23:1221(2)(c), reason would permit of no exception to the majority’s legal finding of permanent total disability were it occasioned in the usual LSA-R.S. 23:1221 context. Hence, the corollary to today’s ruling:

If an injured worker is able to show the presence of the elements listed above, he will be entitled to workers compensation benefits for permanent, not temporary disability benefits; the argument that the injured worker could one day recover or has other employment possibilities will not support an employer’s claims to the contrary under LSA-R.S. 28:1221(2).

Conclusion
Absent guidance on the burden of proof demanded of employer’s seeking a social security offset under LSA-R.S. 23:1225, this panel of this court has fashioned a remedy it deems to be in accordance with the offset provisions of our workers compensation scheme. It has concluded that the presence of certain elements demonstrates clear and convincing evidence that an injured worker’s disability is permanent. I issue this concurrence merely to observe that the findings of the court would pertain equally to an injured worker seeking total permanent disability benefits under LSA-R.S. 23:1221.
11 COOKS, Judge dissenting.
Classification of an employee as temporarily and totally disabled from performing any work activity is insufficient to invoke the “offset” provisions of the Act. Bourgeois v. South Central Bell Tel. Co., 407 So.2d 1245 (La.App. 4th Cir.1981). Ordinarily, the employee bears the burden of establishing by clear and convincing evidence that he is permanently and totally incapable of performing any gainful employment. LSA-R.S. 23:1221(2). Here, however, the employer is seeking to modify a previous temporary total disability finding which the employee embraces as sound. While the Act does not expressly set forth the “burden of proof’ required in offset cases where an employer seeks to establish an employee is totally and permanently disabled, I believe the jurisprudence and the remedial nature of the Act should guide us in finding the employer must satisfy the same strict burden of showing by “clear and convincing” evidence that the employee’s disability is permanent and total. The fact that the duration of a disability may continue for an indefinite period is not sufficiently convincing to show that an employee is permanently disabled. Guillory v. City of Lake Charles 614 So.2d 165 (La.App. 3d Cir.), writ denied, 616 So.2d 700 (La.1993); Brown v. Knost Roofing Corp., 566 So.2d 1024 (La.App. 3d Cir.1990); Brewster v. Manville Forest Products Corp., 469 So.2d 340 (La.App. 2d Cir.1985). Further, this Court has held a claimant is not totally and permanently disabled if his treating physician does not rule out future improvement or recovery. Withers v. Timber Products, Inc., 574 So.2d 1291 (La.App. 3d Cir.1991), writ denied, 580 So.2d 378, reconsideration denied, 12581 So.2d 699 (La.1991). Moreover, the “odd-lot” and “working in pain” doctrine formerly relied on by the courts in assessing the permanent nature of an employee’s disability have been effectively abolished by amendments to the Act enacted chiefly in response to outcries of employers and insurers. Now unaided by any “presumptions” weighing in favor of a permanent disability finding, the “clear and convincing” burden of proof evidentiary requirement has been fully heightened.
It is well settled law in this State that reviewing courts in worker’s compensation cases are subject to the “manifest error/clearly wrong” standard of appellate review articulated in Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, the strict burden of proof rule in worker’s compensation eases also requires that the record evidence as a whole, when construed reasonably, supports the factfinder’s conclusion that *363 the employer’s evidence “clearly and convincingly” weigh in favor of finding the employee permanently and totally disabled. A factfin-der’s construction of the evidence which effectively diminishes the employer’s heavy burden in offset cases constitutes an error of law. Appellate courts are not bound by the “manifest error or clearly wrong” rule in reviewing assigned errors of law. LSA-R.S. 23:1221(2)(c) mandates when the employee is neither employed nor self-employed proof must be presented:
“... by clear and convincing evidence, unaided by any presumption of disability, that [the injured worker] is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self employment.”
In 1988, while working as a mechanic for Lake Charles Dodge, Mr. LeBlanc sustained a back injury which has required two surgical interventions. After the first surgery, Mr. LeBlanc developed a condition known as arachnoiditis, inflammation of the nerves within the spinal canal. By all medical accounts, Mr. LeBlanc suffers persistent pain associated with arachnoiditis and arthritic changes which have progressed since the accident. These conditions have hampered medical efforts to stabilize his back injury. Mr. LeBlanc’s mental health also has appreciably deteriorated because of pain and feelings of hopelessness resulting from his confinement and inability to return to the workplace. Since the accident, his primary treating physicians have been Dr. William Foster, a neurosurgeon, and Dr. Harper Willis, Jr., a consulting psychiatrist retained on the recommendation of Dr. Foster. Both doctors agree Mr. | sLeBIanc’s present inability to perform any gainful occupation substantially results from the constant pain he is forced to endure daily. Although the parties do not dispute Mr. LeBlanc currently suffers from a totally disabling condition, Mr. LeBlanc argues the evidence as a whole simply does not show “clearly and convincingly” that his disability is untreatable and therefore permanent. In his opinion, Dr. Willis testified Mr. LeBlanc is a prime candidate for implantation of a spinal cord stimulator and spinal pump which he believes may markedly decrease the pain he is suffering and aid his return to sedentary employment after rehabilitation. The stimulator, through controlled release of medication, blocks pain impulses from reaching the brain. Dr. Willis confirmed that eighty (80) percent of the patients who have been treated with the implanted device have benefitted greatly by experiencing a reduction in recurrent pain. Many of these patients have managed to return to “some kind” of gainful employment. Hopefully if relieved of pain, in Dr. Willis’ opinion, LeBlanc could progress to participating in a rehabilitation program aimed at improving his work status. While Dr. Foster did not enthusiastically accept the eventuality of Mr. LeBlanc’s future employability, he did acknowledge the stimulator potentially may reduce his pain. He testified:
“Q. There’s a July 24, 1991 report from Dr. Willis. He is suggesting in this case an operation, a spinal cord stimulate and the spinal pump that may—
A. I wouldn’t have any disagreement with that. I think it’s worth a try. What do you to have lose.
Q. As far as his mental disability being a block to some kind of a surgery, he has in the past sort of improved to a point where y’all could operate on him?
A. That’s right. When emotionally he became somewhat stabilized. I did notice even in this report he is less suicidal.
Q. Right.
A. That’s not to say that he still doesn’t have those ideas or thoughts. He is not completely free of those thoughts and he is a severe risk whatever you do. Dorsi Column Stimulator may be an alternative that would help him. It wasn’t mentioned I don’t believe or it wasn’t carried out if it was mentioned when he went to New *364 Orleans. But it’s something that could help him.
Q. My understanding is that there are two different procedures, one is a stimulator and one is a pump that deals with—
A. Putting the narcotics into the pump and it is a computerized dose and it can be refilled periodically. The other one actually in theory blocks the pain impulses before they reach the brain and how the brain interrupts the impulses. Dr. Richardson down in New uOrleans had excellent results. I have sent a number of patients to him. They’re good ones and bad ones, but the ones that uniformly fail are the ones that have a long history of narcotics. They just don’t work too well. I mean, what do you have to lose in a case like this.
Q. And if this particular operation would be performed on Joe Leblanc, it would be to limit the amount of pain that he is feeling due to his arthritic condition?
A. Arthritis, arachnoiditis, nerve root fibrosis, yes; it’s a pain relieving procedure, yes.
Q. Could it work to take the pain away?
A. It could work.”
Although Dr. Foster expressed genuine reservation concerning Mr. LeBlanc’s success in returning to the employment market, and noted Mr. LeBlanc’s arachnoiditis and arthritis conditions were permanent, he did not absolutely rule out the possibility the stimulator might reduce Mr. LeBlanc’s pain and if properly “motivated,” Mr. LeBlanc could perform sedentary employment after rehabilitation.
The hearing officer found much of the medical testimony “speculative at best” in ultimately changing Mr. LeBlanc’s compensation status from temporary to permanent total disability. In closing, he stated: “The employee is certainly entitled to try the stimulator and if the procedure allows him to work, then the matter can be refiled and the TP status rescinded.” The hearing officer’s comments suggest he improperly shifted the burden of proof to the injured worker by requiring that he show at a future hearing the “temporary” status of his condition. In seeking a social security offset, the employer retains the burden at all times of showing by “clear and convincing” evidence the permanency of a worker’s disabling condition. The medical testimony in the record did not rule out the possibility that Mr. LeBlanc’s painful condition could improve with implantation of the stimulator to the extent that further medical treatment and rehabilitation might improve his work status.
The hearing officer was clearly wrong in characterizing the medical evidence as “speculative.” Although the “odds” of Mr. Le-Blanc returning to work are not encouraging, the weight of the medical evidence does not convince me that the employer did not legally satisfy the heavy burden placed upon it in establishing the permanency of Mr. LeBlanc’s disability. See Huval Baking Company, Inc. v. Fontenot, 629 So.2d 431 (La. App. 3d Cir.1993). As mentioned the worker’s compensation act is remedial in nature and to effectuate the humane policies it reflects, any doubts, however slight, regarding the permanency of an injured |sempIoyee’s medical condition in offset eases should be resolved in his favor. Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3d Cir.1988). The employer’s right to seek modification of Mr. LeBlanc’s benefit status in the future is not foreclosed.
Apparently, employers are now unhappy with the statutory changes enacted by the legislature in response to their urging. They have appeared before us time and time again citing LSA-R.S. 23:1221(2)(e) as legislative authority for denying permanent and total disability benefits to seriously injured employees although the medical evidence overwhelmingly shows they will endure substantial pain while working or the only work available to them are those typed as “odd-lot” regardless of the location or availability of such employment or self employment. Even a quadriplegic may not qualify if this rigorous test is applied because the employer might argue his ability to see allows employment as a screen reader for a publishing company. On occasions, we have been required to deny permanent and total benefits *365 to workers who screamed with pain daily or who sustained such serious injury that the possibility of them securing employment was unrealistic. It is patently unfair and violates clear legislation to the contrary to jurispru-dentially change the test for employers motivated by a desire to avoid payment of all benefits under the Act. The same heavy burden ought to apply equally to employers and employees.